Jones, J.
These three cases arise out of claims asserted against the manufacturer of allegedly defective products by remote users; the theory of liability is that which we have called strict products liability (Codling v Paglia, 32 NY2d 330). We now hold that the period of limitation with respect to these claims begins to run at the date of injury and that the duration of such period is that found in CPLR 214 (subds 4, 5) *400 under which there is a limitation of three years in actions for personal injury and property damage. (See 1 Weinstein-Korn-Miller, NY Civ Prac, pars 214.13, 214.14, 214.15.) Accordingly, our court’s holding to the contrary in Mendel v Pittsburgh Plate Glass Co. (25 NY2d 340) must be overruled.[1]
Defendant Bock Laundry Machine Company manufactured and marketed a centrifuge extractor for use in apartment house laundry rooms and commercial laundromats to spin water out of laundry after washing and preparatory to its being placed in a dryer. In Victorson the extractor was sold in 1948 and the injury occurred in 1969; in Rivera the sale was in 1959, the injury in 1967; and in Brown the sale was in 1955 and the injury in 1965. The Appellate Divisions have properly unraveled the procedural complexities, presenting for our determination, on motions addressed to the pleadings, the questions as to when the Statute of Limitations began to run and for what period it continued.
Preliminarily we observe as a matter of analysis that, while one seeking to recover from a manufacturer for injuries sustained in consequence of an alleged defect in its product may be said to have but a single claim, that claim may be grounded in one or more of four causes of action or theories of liability. Depending on the factual context in which the claim arises, the injured plaintiff, and those asserting derivative claims, may state a cause of action in contract, express or implied, on the ground of negligence, or, as here, on the theory of strict products liability. In these cases now before us we are concerned only with claims based on the last theory. What we say here, therefore, should not be understood as in any way referring to the liability of a manufacturer of a defective product under familiar but different doctrines of the law of contracts for injuries sustained by a customer or other person with whom or for whose benefit the manufacturer previously has made a warranty or other agreement, express or implied. As indicated, it may be open to a particular plaintiff to base his case on contract liability or negligence or strict products liability, or on some combination thereof.
Some consideration of the theory of strict products liability is of assistance in the selection of the applicable Statute of Limitations. We acknowledge that for some years there has *401 been a lively discussion as to whether this form of liability sounds in tort or in contract.
Initially we recognize the general distinction between these two areas of the law. "The fundamental difference between tort and contract lies in the nature of the interests protected. Tort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by the law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties.” (Prosser, Torts [4th ed], § 92, p 613.)
The development of what we now, call the doctrine of strict products liability has been both tortuous and spasmodic (Codling v Paglia, supra; Goldberg v Kollsman Instrument Corp., 12 NY2d 432; see discussion in Mendel v Pittsburgh Plate Glass Co., supra, dissenting opn, p 346 et seq.). In reaching and articulating our decision in Codling, we neither created nor discovered a new cause of action. On the contrary, in extending the remedy to plaintiffs who were neither buyers nor users of the product, we recognized in its modern guise a pre-existing theory of liability which had been evolving and maturing over the years, sometimes having been described by use of the phrase "breach of implied warranty”.
In a simplistic sense it is obvious that this liability does not arise out of contract concepts if such concepts be thought of as the means for analyzing the jural relationship between two parties who have entered into a contractual relationship prior to the date on which injury is sustained. Here none of these plaintiffs had had any association with the manufacturer of the centrifuge extractors prior to being injured. Nor are these claims grounded in any contention that the liability of the manufacturer stems from its nonperformance of an obligation to plaintiffs arising out of an agreement, express or implied. Rather than arising out of the "will or intention of the parties”, the liability imposed on the manufacturer under strict products liability, whether it be to purchaser, user, or innocent bystander, is predicated largely on considerations of sound social policy (Codling v Paglia, supra, pp 340-341).
That in the emerging growth and development of the law of liability in these matters, in the best traditions of the common law, it has from time to time been found useful in justification or exposition to use terminology familiar to the law of contracts rather than of torts should be neither surprising nor diverting. As we have recognized, depending on the factual *402 context in which the issue arises or the alternative theory pursued by the litigant, the liability of the product-manufacturer could indeed have been grounded in contract rather than tort theory, or indeed sometimes in both. Historically it even appears that these two fields have not been so categorically discrete as we are sometimes inclined to suppose.[2] As in other instances in the law, analysis and enlightenment are not always advanced when heavy reliance is placed on labels; indeed understanding may even be obscured.
Whatever may have been earlier doubt and confusion, the authorities are now in general agreement that strict products liability sounds in tort rather than in contract. "It has been said over and over again that this warranty — if that is the name for it — is not the old sales warranty, it is not the warranty covered by the Uniform Sales Act or the Uniform Commercial Code. It is not a warranty of the seller to the buyer at all, but it is something separate and distinct which sounds in tort exclusively, and not at all in contract; which exists apart from any contract between the parties; and which makes for strict liability in tort.” (Prosser, Spectacular Change: Products Liability in General, 36 Cleveland Bar Assn J 167-168.) (Velez v Crane & Clark Lbr. Corp., 33 NY2d 117, 124-125 ["strict products liability sounds in tort rather than in contract”]; Goldberg v Kollsman Instrument Corp., supra, p 436 ["A breach of warranty, it is now clear, is not only a violation of the sales contract out of which the warranty arises but is a tortious wrong suable by a noncontracting party whose use of the warranted article is within the reasonable contemplation of the vendor or manufacturer”]; Restatement 2d, Torts, § 402A, comment m; Arrow Transp. Co. v Fruehauf Corp., 289 F Supp 170, 172; Hornung v Richardson-Merrill, 317 F Supp 183, 185; Rosenau v City of New Brunswick, 51 NJ 130, 141-144; Abate v Barkers of Wallingford, 27 Conn S 46, 51-53; 3 Frumer & Friedman, Products Liability; *403 § 40.01, subd [2]; Products Liability: Strict Liability in Tort, Ann., 13 ALR3d 1057.)
Some further analysis is reassuring before jumping, knee-jerk-like, to the conclusion that if liability is grounded in tort, tort Statute of Limitations must automatically be applied. "[I]n applying the Statute of Limitations we look for the reality, and the essence of the action and not its mere name.” (Brick v Cohn-Hall-Marx Co., 276 NY 259, 264.)
Restrictions of time on claim assertion involve two aspects— how long shall the period be within which the claim may be asserted, and as of what date shall that period begin to run?
On principle, there having been no prior relationship between the parties in strict products liability cases, the cause of action if any there be, should accrue at the time the injury is sustained. To hold that it somehow came into being prior thereto would defy both logic and experience. "[I]t is all but unthinkable that a person should be time-barred from prosecuting a cause of action before he ever had one” (Mendel v Pittsburgh Plate Glass Co., supra, p 346). In this perspective the analogy in principle is to "tort” claims, that is claims for injury to person or property, as to most of which, although not all, the statute runs from the date of injury. (Schmidt v Merchants Desp. Transp. Co., 270 NY 287, 299-301; Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427; Restatement, Torts, § 899, comment c, p 525; cf. 14 CJS, Case, Action on, §§ 1, 2.) By contrast, in contract actions the statute runs from the date of the breach of performance of the contractual obligation, in the present context, the date of sale of the defective product. (CPLR 213, subd 2; Uniform Commercial Code, § 2-725, subd [2].)
Then over how long a period thereafter should the injured party be allowed to assert his claim? As in other instances in which periods of limitation must be fixed, the answer depends on a nice balancing of policy considerations. "Any Statute of Limitations reflects a policy that there must come a time after which fairness demands that a defendant should not be harried; the duration of the period is chosen with a balancing sense of fairness to the claimant that he shall not unreasonably be deprived of his right to assert his claim” (Caffaro v Trayna, 35 NY2d 245, 250). We identify no material factors which suggest that the period of limitation should be different where it is sought to impose liability on the manufacturer on the theory of strict products liability rather than on the *404 theory of negligence. Substantially similar considerations are equally cogent and persuasive.
One argument of policy is pressed on us by appellants in these cases. Is it fair or reasonable, they ask, to hold a manufacturer liable for a defect in production many years after the product has left the manufacturer’s plant? The predicament of the manufacturer is not then significantly different whether its liability in tort be grounded in theories of negligence or of strict products liability. One can observe that while passage of time may work a deterioration of the manufacturer’s capability to defend, by similar token it can be expected to complicate the plaintiff’s problem of proving, as he must, that the alleged defect existed at the time the product left the manufacturer’s plant. (See discussion Mendel v Pittsburgh Plate Glass Co., 25 NY2d 340, dissenting opn, p 351, supra.) In any event this consideration, of varying weight from case to case, cannot be accorded such significance as to dictate the outcome.
Again the authorities are now in general agreement that Statute of Limitations governing injuries to person or property are those properly applicable to strict products liabilities claims. (Hornung v Richardson-Merrill, 317 F Supp 183, supra; Williams v Brown Mfg. Co., 45 Ill 2d 418, 430-431; Nelson v Volkswagen of Amer., 315 F Supp 1120, 1121-1122; Holifield v Setco Ind., 42 Wis 2d 750; Rosenau v City of New Brunswick, 51 NJ 130, supra; Arrow Transp. Co. v Fruehauf, 289 F Supp 170, supra; Abate v Barkers of Wallingford, 27 Conn S 46, supra.)[3]
Accordingly each of the several orders of the Appellate Division should be affirmed.

. For criticism of Mendel see, e.g., Symposium on Mendel v Pittsburgh Plate Glass Co. (45 St John’s L Rev 62).

. (Salmond, Torts, pp 8-13 [10th ed, 1945] ["The true boundary-line between contract and tort is obscured by the recognition in the older law (a recognition which has not yet wholly ceased) of certain quasi-contractual obligations the breach of which is really a mere tort”, at p 10]; Maitland, Historical Note on the Classification of the Forms of Personal Action, reprinted in Pollock, Torts, App A, p 451 [14th ed, 1939]; Green, Rationale of Proximate Cause, pp 44-55 [1927]; Ames, The History of Assumpsit, and Salmond, The History of Contract, both studies collected in 3 Select Essays in Anglo-American Legal History, pp 259, 320 respectively [1909]; see, also, Pollock, Contracts, pp 111-15 [12th ed, 1946]; Salmond and Williams, Contracts, § 2 [2d ed, 1945].)

. We observe in passing that the Uniform Commercial Code, in treating of the liability of a manufacturer of a defective product, applies only where such liability is predicated on a contractual obligation, express or implied. As such its provisions are not pertinent when liability is based on the tort doctrine of strict products liability. (Mendel v Pittsburgh Plate Glass Co., supra, pp 351-352; Heavner v Uniroyal, 63 NJ 130; Rosenau v City of New Brunswick, supra; Abate v Barkers of Wallingford, supra; Suvada v White Motor Co., 32 Ill 2d 612; and see collection of authorities in Shanker, Strict Tort Theory of Products Liability and the Uniform Commercial Code: A Commentary on Jurisprudential Eclipses, Pigeonholes and Communication Barriers, 17 Western Reserve L Rev 5.)