OPINION OF THE COURT
Joseph D. Mintz, J.
Plaintiff moves for renewal and reargument of defendants’ motion for dismissal of plaintiff’s complaint on the grounds that the action is barred by the Statute of Limitations. Plaintiff’s motion, for reargument was granted.
Plaintiff’s action for the wrongful death of her husband contains four separate causes of action. The first cause of action is for wrongful death based on strict liability; the second cause of action is for wrongful death based on breach of warranty; the third cause of action is for wrong *94 ful death based on negligence, and the fourth cause of action is for personal injury of the decedent based on the first three causes of action. All four causes of action arise out of the following: On June 7,1976, decedent had surgery at which time an artificial valve was implanted to replace decedent’s defective heart valve. The valve was manufactured by defendant Edwards Laboratories of component parts or ingredients supplied by the other defendants, and sold by defendant Edwards Laboratories some time on or before June 7, 1976. Decedent- died on May 15, 1979, allegedly due to the introduction of teflon particles which had broken off of the valve into the decedent’s blood stream and which ultimately caused a cerebral hemorrhage.
Plaintiff commenced her action by service of summons on defendant E. I. du Pont de Nemours Corporation (du Pont) on May 11, 1981, on defendant Cabot Corporation (Cabot) on May 11, 1981, on defendant Dow Corning Corporation (Dow) on May 7,1981, and on defendant Edwards Laboratories (Edwards) on May 27, 1981 after having delivered the summons to the Sheriff of Erie County pursuant to CPLR 203 (subd [b], par 5).
At argument in Special Term in Erie County on or about September 14,1981, defendants’ original motion to dismiss was granted, on the basis of plaintiff’s failure to commence the action within either the three-year Statute of Limitations for strict liability and negligence claims or the four-year Statute of Limitations for breach of warranty. Defendants argued that the cause of action in strict liability and negligence accrued, if at all, at the time of implant (June 7, 1976), and that the cause of action in strict liability accrued, if at all, at the time of sale (on or before June 7, 1976). Service on May 7, 1981 (the earliest date summons was served) was not within three or four years. The attorneys at argument failed to argue the applicability of EPTL 5-4.1, which allows wrongful death claims within two years of death if the cause of action was viable on the date of death. Even if the cause of action accrued, as defendants argue, on June 7,1976, the causes of action were viable on decedent’s death on May 15, 1979, and service was completed by July 15,1981 (two years after death under EPTL 5-4.1 plus 60 days under CPLR 203 [subd (b), par 5]). At *95 reargument on December 15,1981, it was determined that EPTL 5-4.1 applied, and the first three causes of action for wrongful death were reinstated. It was also determined, however, that EPTL 5-4.1 does not apply to the fourth cause of action for personal injury (Lynch v Albany Med. Center Hosp., 52 AD2d 653) and that unless the action for personal injury was commenced within the three-year Statute of Limitations or its extension of one year under CPLR 210 (subd [a]), the fourth cause of action must be dismissed.
Nevertheless, the court has, sua sponte, reconsidered its prior determination of the date upon which the causes of action grounded in negligence and strict liability accrued, particularly in light of the interim reversal of a case upon which defendants relied (Klein v Dow Corning Corp., 661 F2d 998, revg US Dist Ct, EDNY, March 6, 1981). Furthermore, subsequent examinations before trial indicated the possibility of a factual finding of the approximate date on which the teflon particles broke off of the valve, which occurrence allegedly caused decedent’s death.
The determination of the running of the Statute of Limitations on the claims for negligence and strict liability entail a determination of the date on which injury occurred (Victorson v Bock Laundry Mach. Co., 37 NY2d 395). In this respect, it is important to distinguish between the time of the negligent act, and the time of the injury, for it is the latter which controls the running of the Statute of Limitations. The rationale for this general rule is that a person should not be time barred before he has an actionable claim. In Victorson, the plaintiff was injured by an allegedly defective extractor 21 years after the extractor was sold. The extractor may have presumably been defective when sold, yet the injury from the defect did not occur until sometime later, when the plaintiff was actually harmed. It is clear from Victorson that when a mechanism does external harm, the injury is sustained at the time of actual harm, not at the time the defective mechanism is purchased or the defect created. This same rule should be applied when an internal injury is sustained.
When a harmful substance is taken internally, the injury occurs at its intake. This is the substance of the Court of Appeals rulings in Thornton v Roosevelt Hosp. (47 NY2d *96 780), Schwartz v Heyden Newport Chem. Corp. (12 NY2d 212, cert den 374 US 808), and Schmidt v Merchants Desp. Transp. Co. (270 NY 287).* The rationale for such a rule is twofold: First, if the substance is harmful, its injection begins to set in motion the ultimate injurious effect. Thus, the injury is the introduction of the harmful substance into the body, not the ultimate harm which ensues. Second, when a harmful substance is injected, it is diffused into the body’s biological network. At the time the action is commenced no remnants of the substance itself remain. It will not be possible to discern the method of injection, the personnel involved or even the identity of the substance itself without reverting to testimonial evidence or the examination of records, either of which may require the recall of events which are long past. Since a major purpose of Statutes of Limitation is the prevention of claims the proof or defense of which require “stale” evidence, there is significant policy support for the running of the Statute of Limitations from the date of injection of a harmful substance such as a cancer-producing drug or dust.
On the other hand, these rationales do not extend to internal injuries caused by implanted mechanisms. First, the mechanism is not in and of itself harmful. Although the defect which is the basis of the negligent act, or the act for which the manufacturer is strictly liable has already occurred, the harm, from which the injury ensues, is present only when the mechanism breaks down. There is no injury at implant because at that time there is no harmful agent present. Thus, the injury occurs when the mechanism changes from a harmless agent to one that is capable of causing harm. There is no similar change with respect to the chemicals injected or dust inhaled in Thornton (supra), Schwartz (supra), and Schmidt (supra). Thus, it would be difficult, if not impossible, in those situations to determine when the substance became harmful — it was either always harmful or always harmless, although in varying degrees. In contrast, however, it can often be determined approximately when an implanted mechanism breaks down, and consequently, it is quite reasonable that the *97 injury is considered to be sustained at that moment in time and not at the time of implant.
Furthermore, the misfunctioning mechanism remains in the implantee’s body, available for inspection by the parties. The defendants to such an action would not be prejudiced in having to defend a “stale” claim. Thus, cases involving injuries due to an implanted mechanism are, to this extent, more closely, related to the rationale of the rule in “foreign object” cases (Flanagan v Mount Eden Gen. Hosp., 24 NY2d 427) where the statute does not begin to run until the patient could reasonably have discovered the malpractice. Although plaintiff here does not claim that the statute runs from date of discovery, but rather from the date of injury, the rationale of the date of discovery rule in Flanagan is applicable to the instant situation.
For these reasons, courts have refused to extend the rule of Thornton (supra), Schwartz (supra), and Schmidt (supra) to cases involving the implant of a mechanism. In Murphy v St. Charles Hosp. (35 AD2d 64), a prosthetic device implanted in plaintiff’s hip on January 18, 1963 broke on May 17,1967 and had to be surgically removed. The action commenced on April 16, 1968 was held to be within the three-year Statute of Limitations, in that the injury was sustained on May 17, 1967 when the device broke. Before that time, there was no actual injury. Similarly, in Klein v Dow Corning Corp. (661 F2d 998, revg US Dist Ct, EDNY, March 6, 1981, supra), silicone implants which were surgically placed in the plaintiff’s breasts on September 30, 1965 ruptured in April, 1978 requiring surgical removal. The action commenced on December 19,1979 was held not time barred by the Second Circuit, reversing the Eastern District, New York, in that the injury was sustained when the implants burst. The court (p 999) held Thornton (47 NY2d 780, supra) inapplicable as “in Thornton, injection and injury were concurrent. The chemical began, its damage immediately. Here damage occurred only when the prostheses burst.” Finally, in Stein v Robins Co. (NYLJ, June 23, 1981, p 6, col 4), an intrauterine device known as a “Daikon Shield” was medically inserted in plaintiff in 1972. In 1978, she developed pelvic inflammatory disease which necessitated the surgical removal of *98 her right fallopian tube and ovary. The court held the action commenced in September, 1980 to be not time barred, as the cause of action did not occur until the infection was contracted and consequently injury was sustained. The court compared the case to Murphy (supra) and found that like Murphy, the device had at some identifiable point broken down, namely, when the tail of the Daikon Shield “conducted bacteria up into the womb.” In evaluating the policy arguments of both parties, the court concluded (p 7, col 1): “In view of the lack of prejudice to the defendant in defending the claim for a design defect in a readily available and identifiable fixed device, the relatively short time span involved and the probable basis for assuming that the plaintiff was not injured in fact until the disease was revealed, the date of injury for calculating the limitations period should be the date when infection developed and manifested itself in 1978.”
Directly contrary to the decision in Stein (supra) is Lindsey v Robins Co. (NYLJ, June 30, 1981, p 11, col 2) where the court found “there is little qualitative difference between the injection of a hazardous radioactive dye, as in Thornton, and the introduction into the body of the allegedly defective contraceptive device.”
Whether or not an infection-causing intrauterine device is significantly different from a hazardous dye, is unnecessary to the decision in the instant case. However, a mechanism which physically breaks at some cognizable point in time is sufficiently different from an injected drug such as in Thornton (supra). In fact, there is no reason why the general rule of Victorson (37 NY2d 395, supra) should be departed from here. Injury occurred upon the breakage of the artificial heart valve, and consequently the Statute of Limitations for plaintiff’s personal injury claims in negligence and strict liability begins to run at that date of injury. Naturally, evidence is to be introduced at trial to determine the date on which injury occurred, and, consequently, all defendants’ affirmative defenses are preserved.
Finally, as to that much of the fourth cause of action based upon breach of warranty: it is possible that the device was sold before June 7,1976. The Statute of Limita *99 tions would run for four years from the sale (or to some date no later than June 7, 1980). The Statute of Limitations could only be extended under CPLR 210 (subd [a]) for one year from the date of decedent’s death (or to May 15, 1980). Since service had not been completed by that time, that portion of the fourth cause of action which is based on breach of warranty is untimely. Therefore only that portion of the fourth cause of action which is based on negligence or strict liability is still viable.
For the foregoing reasons, and subject to the foregoing limitation, causes of action first, second, third and fourth are hereby reinstated.

 (See, also, Reis v Pfizer, Inc., 48 NY2d 664; Steinhardt v Johns-Manville Corp., 54 NY2d 1008.)