**Anthony M. WICK, Plaintiff,**

v.

**WABASH HOLDING CORP., formerly known as Diehl Machines, Inc., Defendant/Third–Party Plaintiff,**

v.

**Fitzpatrick & Weller, Inc., Third–Party Defendant.**

No. 07–CV–785.

United States District Court, W.D. New York.

March 14, 2011.

Patrick J. Maloney, Dempsey & Dempsey, Buffalo, NY, for Plaintiff.

James A. Gallagher, Jr., Peter F. Vetro, Gallagher & Faller, Esq., Garden City, NY, for Defendant/Third–Party Plaintiff.

Robert S. Stockton, Stockton Barker & Mead LLP, Albany, NY, for Third–Party Defendant.

## ORDER

RICHARD J. ARCARA, District Judge.

This case was referred to Magistrate Judge Leslie G Foschio pursuant to 28 U.S.C. § 636(b)(1), on December 19, 2007. On February 1, 2010, defendant filed a motion for summary judgment. On September 14, 2010, Magistrate Judge Foschio filed a Report and Recommendation, recommending that defendant Wabash Holding Corp.'s ("Wabash") motion for summary judgment be granted and that Wabash's cross-claim against defendant Fitzpatrick & Weller be dismissed as moot.[1]

Plaintiff filed objections to the Report and Recommendation on September 27, 2010 and defendant Wabash and third-party defendant Fitzpatrick and Weller filed responses. Oral argument on the objections was held on February 23, 2011.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination

---

1. Alternatively, the Magistrate Judge recommended that defendant's motion challenging the qualifications of plaintiff's expert witness to render an opinion should be dismissed as moot.

of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, defendant Wabash's motion for summary judgment is granted, and the cross-claim against third-party defendant Fitzpatrick and Weller is dismissed as moot. The Clerk of Court shall take all steps necessary to close the case.

IT IS SO ORDERED.

### AMENDED REPORT and RECOMMENDATION

LESLIE G. FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This case was referred to the undersigned by Honorable Richard J. Arcara on December 19, 2007, for pretrial matters. The matter is presently before the court on Defendant's motion for summary judgment (Doc. No. 53), filed February 1, 2010.

### *BACKGROUND*

Plaintiff Anthony M. Wick ("Wick" or "Plaintiff"), commenced this personal injury action on October 9, 2007, in New York Supreme Court, Cattaraugus County, alleging that on June 21, 2006, during the course of his employment with Fitzpatrick & Weller, ("F & W" or "Third–Party Defendant"), he sustained severe bodily injuries, including partial amputation of his

first and second digits of his right hand and a fracture of the fifth digit of his right hand, while using a Diehl moulding machine, Model No. DF69 ("the moulder"[1] or "the machine"), manufactured by Defendant Wabash Holding Corp. ("Wabash" or "Defendant"), formerly known as Diehl Machines, Inc. Plaintiff alleges three claims against Defendant, including negligence ("First Cause of Action"), strict products liability ("Second Cause of Action"), and breach of warranty ("Third Cause of Action"). In particular, Plaintiff maintains that Defendant "negligently, carelessly and recklessly designed, manufactured, planned, sold or distributed" the machine, which was defective insofar as the machine did not have a proper guard to prevent operator injuries such as those suffered by Plaintiff. Complaint ¶¶ 11 and 14. Defendant was served with the summons and Complaint on October 22, 2007. On November 20, 2007, Defendant removed the action to this court pursuant to 28 U.S.C. § 1441, asserting diversity of citizenship as the basis for subject matter jurisdiction. Defendant's answer (Doc. No. 7), was filed on December 14, 2007. On February 5, 2008, Defendant filed a third-party complaint (Doc. No. 20) ("Third–Party Complaint") against Plaintiff's employer, F & W, alleging that at the time of Plaintiff's accident, the machine was not in the same condition as when originally manufactured, but had been substantially modified by a third party.

On February 2, 2010, Defendant filed the instant motion for summary judgment (Doc. No. 53) ("Defendant's Motion"), asserting Plaintiff's claims are without basis in law or fact and, alternatively, challeng-

---

1. The documents pertaining to the machine at issue, including the owner's manual, purchase order, invoice, bill of materials, and part directory, all refer to the machine as a "moulder," the traditional spelling of the machine is used, rather than the Americanized spelling, *i.e.*, "molder." As such, when referring to the subject machine, the court also uses the traditional spelling.

ing Plaintiff's expert's qualifications to render an opinion. Defendant's motion is supported by the attached Affidavit of James A. Gallagher, Jr., Esq. ("Gallagher Affidavit"), and the Affidavit of Robert Rozman ("Rozman Affidavit"), the Memorandum of Law on Behalf of Defendant in Support of Summary Judgment (Doc. No. 54) ("Defendant's Memorandum"), and Defendant's rule 56.1 Statement of Facts (Doc. No. 55) ("Defendant's Statement of Facts"), with attached exhibits A through S ("Defendant's Exh(s). ____"). On February 4, 2010, Third–Party Defendant filed the Affirmation of Robert S. Stockton, Esq. in Support of Defendant's Motion for Summary Judgment (Doc. No. 57) ("Stockton Affirmation"). On March 5, 2010, Plaintiff filed the Memorandum of Law in Opposition to Summary Judgment (Doc. No. 60) ("Plaintiff's Memorandum"), and Plaintiff's Counter Statement to Defendant Wabash's Rule 56.1 Statement of Material Facts (Doc. No. 61) ("Plaintiff's Statement of Facts"). On March 8, 2010, Plaintiff filed the Affidavit of Patrick J. Maloney, Esq. in Opposition (Doc. No. 63) ("Maloney Affidavit"), with attached exhibits A though M ("Plaintiff's Exh(s). ____").[2] On March 18, 2010, Defendant filed the Reply Affidavit of James A. Gallagher, Jr., Esq., in Further Support of Motion for Summary Judgment (Doc. No. 64) ("Gallagher Reply Affidavit"). Oral argument was deemed unnecessary.

Based on the following, Defendant's motion for summary judgment (Doc. No. 53), should be GRANTED, and the Clerk of the Court should be directed to close the file; alternatively, Defendant's motion to preclude Plaintiff's expert witness (Doc. No. 53), should be DISMISSED as moot.

**2.** The Maloney Affidavit with attached exhibits was originally filed on March 5, 2010 (Doc. No. 59), but was re-filed on March 8, 2010, to correct a signature error.

## FACTS [3]

At all times relevant to this action, Plaintiff was employed as a wood moulding machine operator by Fitzpatrick & Weller, Inc. ("F & W"), a hardwood lumber products manufacturer and supplier, located at 12 Mills Street in Ellicottville, New York. In his employment position, Plaintiff operated a wood moulding machine manufactured by Diehl Machine Company ("Diehl"), Model DF–69, bearing serial number 9/82M–4561–3943 ("the machine" or "the moulder"). Defendant Wabash is the corporate assignor and successor to the assets and liabilities of Diehl.

The moulder is a continuous process machine utilizing seven profiled cutting blades to shape lengths of wood. The raw wood stock to be shaped is fed into the moulder's feed end, and power driven feed rolls move the wood though the machine while multiple rotating cutting heads equipped with sharp profiled cutting blades remove excess material, leaving the finished product which exits at the tail of the machine. Previous to his employment with F & W, Plaintiff had operated a similar wood moulding machine for two years.

On June 21, 2006, Plaintiff, while working in his wood moulding machine operator position at F & W, while operating the machine, attempted to adjust certain of the moulder's rotating cutter heads, when Plaintiff's hand slipped off a lock down handle, bumped against a safety guard covering the machine's rotating cutting head, allowing Plaintiff's right hand to enter into the machine and come into contact with a then exposed rotating cutting heads, thereby sustaining serious injuries, including partial amputation of the first and

**3.** Taken from the pleadings and motion papers filed in this action.

second digits and a fracture of the fifth digit. At the time of the accident, a hinged, pivoting "point of operation" safety guard installed on the machine to cover the rotating cutting head was held in place with a bungee cord, such that the safety guard could easily be displaced if bumped or brushed against by the machine's operator, exposing the cutting head. Further, it was necessary to use a separate tool, such as a wrench, to secure the safety guard in place, making proper use of the guard cumbersome and, thus, ineffective.

In connection with this action, Plaintiff retained as an expert witness Douglas J. Rowland, P.E. ("Rowland"), of Robson Forensic, to examine the moulder and render an expert report as to whether the moulder was defectively manufactured.[4] On April 15, 2007, Rowland inspected the machine. Rowland Report at 2. According to Rowland, certain hazards could not be eliminated from the moulder, including the sharp edges of the cutting blades and cutter heads, without sacrificing the machine's utility. *Id.* at 4. As such, the machine should have been designed with effective safety guards that did not require separate tools, such as a wrench, to operate. *Id.* Rowland concluded that "[i]t was reasonably foreseeable that employees of Fitzpatrick and Weller would modify the ineffective hinged barrier guard in an attempt to correct the deficiencies [regarding the ineffective safety guard]." *Id.* at 5. The machine also should have "point of operation" safety warnings and instructions. *Id.* at 6. The absence of an appropriate safety guard and point of operation safety warnings was therefore, according to Rowland, a design defect and failure to warn. *Id.* at 6–7. Following his inspection of the machine and review of related documents, Rowland rendered an opinion attributing Plaintiff's accident to the lack of a proper safety guard, such as a quarter turn lock down lever or knob which could be operated without the use of separate tools, and which would have prevented the accident. Rowland also opined that point of operation warnings and instruction would have prevented the accident. *Id.*

Diehl's company records indicate Diehl manufactured the moulder in September 1982, and sold the machine to Thonet Industries Inc. ("Thonet"), in York, Pennsylvania, shipping with the moulder an owner's manual and a bill of materials indicating all the component parts installed in the machine. Such component parts included the hand wheel devices both on the side of each horizontal spindle pivoting guard assembly, as well as on the top slide guard of the lower horizontal spindle guard assemble, to which Rowland refers. As such, as originally manufactured and delivered, the moulder did not require any additional tools to position the safety guard in place while the machine was running because the guards themselves were fitted with individual quarter turn levers at the pivoting point with hand wheels on the top of the slide lock points. Both sets of guard locking devices, however, were missing from the machine when Rowland conducted his examination on April 15, 2007, as well as on the date of Plaintiff's accident on June 21, 2006.

Subsequently the machine came into the possession of the Selby–Williams Company ("Selby–Williams"), which had purchased Thonet's assets. Selby–Williams then closed the York facility, with Thonet becoming a Selby–Williams brand name. Selby–Williams was then purchased by

---

4. A copy of Rowland's Engineer's Report of the Anthony Wick Incident ("Rowland Report") is filed as Plaintiff's Exh. I.

Falcon Industries ("Falcon"), which was in turn purchased by Commercial Furniture Corporation which continues to own the Thonet brand. In July 1987, the machine was purchased from Thonet by F & W, who continued to use the machine until 2006 when it was sold.

## DISCUSSION

### 1. Summary Judgment

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir.2008) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir.2007)). Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v.*

*March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995).

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor and "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995) (citing cases). Furthermore, "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996).

Defendant argues in support of summary judgment that Plaintiff is unable to establish that the moulder was defectively designed because the moulder originally incorporated the hand wheels and quarter-turn lock down levers that Rowland opined were necessary, but that such safety devices were later removed by a third-party, such that the Defendants cannot be held liable for designing or manufacturing the machine without the safety devices. Defendant's Memorandum at 5–9. Defendant also maintains that Plaintiff cannot establish liability based on a failure to warn because the hazards posed by the moulder were patently dangerous, posing an open and obvious risk, and because Plaintiff testified as his deposition that he was fully aware of such hazards. *Id.* at 9–11. Alternatively, Defendant maintains that Plaintiff's expert witness, Rowland, has no experience with wood moulding machines, other than Rowland's single examination of the moulder at issue in this action, and, therefore, is not sufficiently qualified, such

that Rowland's opinion is speculative and unreliable. *Id.* at 11–16.

Plaintiff's argument in opposition to summary judgment is limited to a single statement relying on Plaintiff's expert witness's report that the machine was defectively designed because it lacked a quarter turn lock down lever for the guards in question covering the rotator heads. Plaintiff's Memorandum at 3. Plaintiff makes no argument opposing summary judgment on the failure to warn claim, and, with regard to Defendant's alternative argument challenging Rowland's qualifications to render an expert opinion, states only that issues of fact prevent a determination on Rowland's qualifications. *Id.* In response to Defendant's Statement of Facts, Plaintiff asserts that despite serving on Defendant a notice for discovery and inspection, requesting all original design drawings and component parts, along with the names of any company representatives with knowledge of the machine, Defendant replied that no such representatives were available, and no original blueprints or design documents were ever forwarded to Plaintiffs. Plaintiff's Statement of Facts ¶ 14.

In further support of summary judgment, Defendant points to Plaintiff's failure, in opposing summary judgment, to contest Defendant's arguments in support of both summary judgment, and Defendant's alternative challenge to Rowland's qualifications. Gallagher Reply Affidavit ¶¶ 4–5. With regard to Plaintiff's assertion that Defendant has failed to provide Plaintiff with certain documents or the name of a representative with knowledge of the machine, Defendant maintains that on November 13, 2008, and January 20, 2009, Defense counsel served on Plaintiff's counsel supplemental Rule 26(e) disclosures responsive to Plaintiff's discovery request for documents and drawing con-

cerning the moulder, including design documents, sales and purchase materials, the moulder's sales brochure, instruction manual, and material parts list, and engineering drawings. Gallagher Reply Affidavit ¶ 7 and Defendant's Exhs. D and. E. *Id.* Finally, Defendant asserts that although Wabash, as a holding company, has never had any employees with knowledge of the machine whom Defendant could identify in response to Plaintiff's request, Defendant did identify to Plaintiff Diehl president and owner Robert Rozman ("Rozman"), as a Diehl employee possessing the requested information, but that Plaintiff did not depose Rozman. *Id.* ¶ 9.

### A. Products Liability

■ "In New York, a plaintiff injured by an allegedly defective product may seek recovery against the manufacturer on the basis of any one or more of four theories of liability," including contract, express or implied, negligence, or strict products liability. *Voss v. Black & Decker Mfg. Co.,* 59 N.Y.2d 102, 463 N.Y.S.2d 398, 450 N.E.2d 204, 207 (N.Y.1983) (citing *Victorson v. Bock Laundry Mach. Co.,* 37 N.Y.2d 395, 373 N.Y.S.2d 39, 335 N.E.2d 275, 276–77 (N.Y.1975)). Although the available defenses and applicable limitations principles of the various liability theories differ, there can be "a high degree of overlap between the substantive aspects" of the causes of action. *Denny v. Ford Motor Corp.,* 87 N.Y.2d 248, 639 N.Y.S.2d 250, 662 N.E.2d 730, 734 (N.Y.1995) (affirming that the doctrines of strict products liability and implied warranty are not identical in every respect such that strict products liability has not subsumed a breach of implied warranty cause of action because the two doctrines are not identical, and citing *Victorson,* 373 N.Y.S.2d 39, 335 N.E.2d at 280). In this case, Plaintiff asserts all four theories of liability as grounds for recovery.

### 1. Strict Products Liability

■■ Established New York law holds "that 'the manufacturer of a defective product is liable to any person injured or damages if the defect was a substantial factor in bringing about his injury or damages; provided (1) that at the time of the occurrence the product is being used * * * for the purpose and in the manner normally intended, (2) that if the person injured or damaged is himself the user of the product he would not by the exercise of reasonable care have both discovered the defect and perceived its danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages.'" *Voss,* 463 N.Y.S.2d 398, 450 N.E.2d at 207 (quoting *Codling v. Paglia,* 32 N.Y.2d 330, 345 N.Y.S.2d 461, 298 N.E.2d 622, 628–29 (N.Y.1973)). A manufacturer may be liable under strict products liability for defective products based on a "manufacturing flaw, improper design or failure to warn." *Sukljian v. Charles Ross & Son Co., Inc.,* 69 N.Y.2d 89, 511 N.Y.S.2d 821, 503 N.E.2d 1358, 1360 (N.Y.1986) (citing *Voss,* 463 N.Y.S.2d 398, 450 N.E.2d at 207, and *Robinson v. Reed–Prentice,* 49 N.Y.2d 471, 426 N.Y.S.2d 717, 403 N.E.2d 440, 443 (N.Y.1980)). Specifically, under strict products liability, a manufacturer which places a defective product on the market is liable for injury resulting from using the product for its intended or reasonably foreseeable purposes. *Denny v. Ford Motor Company,* 87 N.Y.2d 248, 639 N.Y.S.2d 250, 662 N.E.2d 730, 736 (N.Y.1995) (affirming distinction, under New York law, between claims based on strict products liability and breach of implied warranty of fitness pursuant to N.Y. U.C.C. § 2–314[2][c], including being "minimally safe" for the product's "expected purpose"). In this case, Plaintiff alleges strict products liability claims of defective design and failure to warn.

### a. Defective Design

■■ To establish a prima facie case in strict products liability based on design defect, "'the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury.'" *Adams v. Genie Industries, Inc.,* 14 N.Y.3d 535, 903 N.Y.S.2d 318, 929 N.E.2d 380, 383–84 (N.Y.2010) (quoting *Voss,* 463 N.Y.S.2d 398, 450 N.E.2d at 208). Whether a product "is not reasonably safe" turns on whether, were the design defect "'known at the time of the manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner.'" *Id.* As such, strict products liability based on a defective design allegation may be imposed where, upon consideration of the product's potential for causing injury and the availability of alternative designs, a jury concludes that it was unreasonable to market the product in its present condition based on the design used by the manufacturer to produce the defective product. *Denny,* 639 N.Y.S.2d 250, 662 N.E.2d at 732. A finding of such liability requires the jury to balance the risks of using the product in its present condition against the product's risks and costs, and against the risks, usefulness and costs of using the alternative design instead of the one creating the alleged defect. *Id.*

Defendant argues in support of summary judgment that Plaintiff is unable to establish that the moulder was defectively designed because the moulder originally incorporated the hand wheels and quarter-turn lock down levers that Plaintiff's expert, Rowland, opined were necessary, but that such safety devices were later removed by a third-party, such that the De-

fendants cannot be held liable for designing or manufacturing the machine without the safety devices Plaintiff's expert opined were necessary for the machine's reasonably safe operation. Defendant's Memorandum at 5–9. Although Plaintiff filed in opposition to summary judgment a copy of the Rowland Report, Plaintiff's Statement of Facts, and the Maloney Affidavit with numerous attached exhibits essentially establishing that the moulder, at the time of the accident, was not equipped with the safety devices recommended by Rowland, including the quarter-turn lock down handles and the hand wheels, a fact Defendant does not dispute, Plaintiff's sole legal argument in response to Defendant's Motion is that

> Plaintiff has provided adequate testimony, through his expert, that the machine was defectively designed in that it lacked a quarter turn lock down lever for the guards in question covering the rotator heads, thus making it defective and unsafe.

Plaintiff's Memorandum at 3.

Plaintiff does not, however, dispute Defendant's contention that the moulder was originally equipped with the hand wheels and quarter-turn lock down levers which Plaintiff's expert opined would have rendered the moulder safe. Nor does Plaintiff dispute that such safety features were subsequently removed or defeated.

■■■ It is fundamental that no manufacturer "may be automatically held liable for all accidents caused or occasioned by the use of its product." *Robinson*, 426 N.Y.S.2d 717, 403 N.E.2d at 443. "While the manufacturer is under a nondelegable duty to design and produce a product that is not defective, that responsibility is gauged as of the time the product leaves the manufacturer's hands." *Id.* (citations omitted). "Substantial modifications of a product from its original condition by a third party which render a safe product defective are not the responsibility of the manufacturer." *Id.* (holding defendant was not strictly liable for defective design where evidence established that when defendant sold molding machine, machine was not defective, and had machine been left intact, the machine's safety gate and connecting interlocks would have rendered the predicate accident an impossibility).

■■■ Similarly, in the instant case, the evidence in the record establishes that the moulder, when manufactured by Diehl, was equipped with hand wheels and lock down levers that would, in the opinion of Rowland, have prevented Plaintiff's accident, but that at some unknown time between Diehl's original sale of the moulder in September 1982, and the date of Plaintiff's accident in June 2006, the moulder's original safety devices were removed and replaced with a safety guard held in place by a bungee, for which a separate tool was needed to secure the guard in place, significantly diminishing the level of safety to be provided by the guards. Such evidence includes copies of the original purchase order and sales invoice memorializing Diehl's sale of the moulder to Thonet on September 20, 1982, Defendant's Exhs. A and B, the moulder's owner's manual, containing a warning cautioning, as relevant to this case, that "ALL ROTATING CUTTERS AND MOVING PARTS MAY BE HAZARDOUS TO OPERATORS. CARELESSNESS CAN CAUSE SERIOUS BODILY INJURY. * * * DO NOT OPERATE MACHINE WHEN *GUARDS, COVERS,* AND *SAFETY DEVICES* HAVE BEEN REMOVED OR ARE NOT IN WORKING ORDER." Defendant's Exh. C (underlining added).

Several documents submitted by Defendant establish the moulder was equipped with several adjustable lock down handles at the relevant pivot points, and hand

tightening wheels on the slide guards, including the moulder's bill of materials, Defendant's Exhs. D and G, pages from the moulder's parts directory and vendor identifying the adjustable lock down handles, Defendant's Exhs. H and I, and the locking hand knobs, Defendant's Exhs. J and K. Rozman explains that these parts are the same type of parts identified by Rowland as necessary to render the moulder safe. Rozman Affidavit ¶¶ 9 and 10. Plaintiff failed to challenge these submissions.

Thus, Plaintiff does not dispute Defendant's contention that the moulder was originally equipped with the very hand wheels and quarter-turn lock down levers Rowland opined would render the moulder safe. Nor does Plaintiff challenge the authenticity or correctness of Defendant's evidence, including the Rozman Affidavit and related documents, submitted in support of summary judgment on this claim. Rather, Plaintiff, in an affidavit submitted in opposition to summary judgment, asserts that despite serving on Defendant a notice for discovery and inspection, requesting all original design drawings and component parts, along with the names of any company representatives with knowledge of the machine, Defendant replied that no such representatives were available, and no original blueprints or design documents were ever forwarded to Plaintiffs. Plaintiff's Statement of Facts ¶ 14. As noted, however, Discussion, *supra*, at 101, Defendant maintains that on November 13, 2008, Defense counsel served on Plaintiff's counsel Supplemental Rule 26 Initial Disclosures containing copies of various documents, including the Machine Operation Manual, Machine Brochure, and other documentation pertaining to the machine, including revised machine blueprints concerning the overhead guard and the bottom head covers of those guards. Gallagher Reply Affidavit ¶ 7 and Defen-

dant's Exh. D. Also provided to Plaintiff were copies of the machine parts and sales and purchase materials, including the material parts listing for the machine. *Id.* and Defendant's Exh. E. On January 20, 2009, Defendant submitted to Plaintiff additional documentation including the Machine Brochure, the Machine Instruction Manual, the Machine Material Parts List, and four engineering drawings of the machine, including drawings of the head guard covers, both top and bottom. *Id.* Finally, Defendant asserts that because Wabash is merely a holding company, it has never had any employees with knowledge of the machine whom Defendant could identify in response to Plaintiff's request, but that Defendant did identify to Plaintiff Diehl president and owner Rozman, as a Diehl employee possessing information regarding documentation on the manufacture of the machine, its history, and general operation. *Id.* ¶ 9. Plaintiff, however, never deposed Rozman, *id.*, nor has Plaintiff moved pursuant to Fed. R.Civ.P. 56(f) for an order granting Plaintiff time to obtain affidavits or declarations or to take discovery necessary to oppose summary judgment. Plaintiff's asserted lack of discovery of information pertaining to the moulder thus provides no basis for denying summary judgment to Defendant on the design defect claim.

Defendant has sufficiently established that when the moulder left the manufacturer's possession, *i.e.*, upon its sale to Thonet on September 20, 1982, the moulder was equipped with the hand wheels and quarter-turn lock down levers that would have rendered the moulder safe and prevented the accident in which Plaintiff was injured. That the moulder did not, as of June 21, 2006 when Plaintiff was injured, remain equipped with the same safety features, establishes that the moulder was substantially modified by a party other

than Defendant after the moulder left the manufacturer's possession and control.[5] Because Defendant cannot be held liable for injuries resulting from a later substantial modification, by someone other than Defendant, of a product rendering the product unsafe, *Robinson,* 426 N.Y.S.2d 717, 403 N.E.2d at 443, Defendant's Motion, should be GRANTED as to Plaintiff's strict products liability design defect claim.

### b. Failure to Warn

Defendant maintains that Plaintiff cannot establish liability based on a failure to warn because the hazards posed by the moulder were patently dangerous, posing an open and obvious risk, and because Plaintiff testified as his deposition that he was fully aware of such hazards. *Id.* at 9–11. Plaintiff does not make any argument opposing summary judgment on this claim.

■■■■■ Preliminarily, the court may, in its discretion, deem Plaintiff's failure to warn claim abandoned based on Plaintiff's failure to argue in opposition to summary judgment on the claim. *See Molinari v. Bloomberg,* 564 F.3d 587, 609 N. 15 (2d Cir.2009) (deeming abandoned claim to which appellant offered no response to appellees' argument on appeal); *Kuebel v. Black & Decker (U.S.) Inc.,* 2010 WL 1930659 at *1 (W.D.N.Y. May 12, 2010) (citing *Taylor v. City of New York,* 269 F.Supp.2d 68, 75 (E.D.N.Y.2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (citing *Douglas v. Victor Capital Group,* 21 F.Supp.2d 379, 393 (S.D.N.Y.1998) (collecting cases))). Here,

not only did Plaintiff fail to argue in opposition to summary judgment on the failure to warn claim, but Plaintiff's entire argument in opposition to summary judgment is limited to a single sentence in support of the design defect claim. Plaintiff's anemic summary judgment response is consistent with a finding that Plaintiff intended to abandon the failure to warn claim. As such, Plaintiff's failure to warn claim should be deemed abandoned and summary judgment on the claim should be GRANTED in favor of Defendant. Alternatively, because the matter is before the undersigned for a report and recommendation, the court addresses the merits of Plaintiff's failure to warn claim.

■■■■ It is undisputed that the moulder's owner's manual contains the following warning:

ALL ROTATING CUTTERS AND MOVING PARTS MAY BE HAZARDOUS TO OPERATORS. CARELESSNESS CAN CAUSE SERIOUS BODILY INJURY. * * * DO NOT OPERATE MACHINE WHEN GUARDS, COVERS, AND SAFETY DEVICES HAVE BEEN REMOVED OR ARE NOT IN WORKING ORDER.

Defendant's Exh. C.

There is, however, no evidence in the record establishing any other warning, including any "point of operation" warning with which Rowland, in his opinion, maintains should have been placed on the moulder at the source of the hazard. Rowland Report at 6. Defendant does not dispute that the moulder did not bear any such warning. Rather, Defendant asserts

---

**5.** Although it is not clear from the record when the moulder was modified, the Rowland Report refers to one Ronald Rohwer, an F & W tool grinder and set-up man and a former 12–year operator of the moulder as testifying that "he latched the incident guard with the

bungee cord himself." Rowland Report at 5. This statement, undisputed by Plaintiff, strongly suggests that the safety guard had already been substantially modified before Plaintiff commenced employment with F & W.

that Plaintiff's experience with moulding machines and awareness of the hazards, rendered any such point of operation warning unnecessary. Defendant's Memorandum at 10–11.

■ No duty to warn arises when the injured party is already aware of the specific hazard. *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 677 N.Y.S.2d 764, 700 N.E.2d 303, 308 (N.Y.1998) ("where the injured party was fully aware of the hazard through general knowledge, observation or common sense, or participated in the removal of the safety device whose purpose is obvious, a lack of a warning about that danger may well obviate the failure to warn as a legal cause of an injury resulting from that danger."). "Thus, it may well be the case that a given risk is not 'obvious,' in the sense of precluding any duty to warn, but that nevertheless, because the risk was well understood by the plaintiff, a warning would have made no difference." *Burke v. Spartanics, Ltd.*, 252 F.3d 131, 139 (2d Cir.2001) (citing *Brady v. Dunlop Tire Corp.*, 275 A.D.2d 503, 711 N.Y.S.2d 633, 634–36 (3d Dep't.2000)). Under such circumstances, "the failure to warn was therefore not a cause of the harm." *Burke*, 252 F.3d at 139.

Here, Plaintiff testified at his deposition that he was first employed as a moulder operator by Bush Industries ("Bush") in 1997, where he received four months of "on-the-job training" with a wood moulder, similar to the moulder on which Plaintiff sustained his injury. Wick Deposition Tr.[6] at 7–10. Plaintiff worked as a moulder operator at Bush for two years. *Id.* at 9. One difference between the moulder Plaintiff operated while employed at Bush and the moulder on which Plaintiff was injured was the Bush moulder was equipped with "hydraulic hold downs," instead of manual

safety features. *Id.* at 10. Plaintiff described the "hydraulic hold downs" as a hinged door covering all the moulder's rotating cutting heads and that the door, when lifted, was held in place by hydraulic pistons. *Id.* at 12–13. Plaintiff testified he received training on the moulder's cutting head guards. *Id.* at 14–15.

Plaintiff testified that upon commencing work as a moulder operator with F & W, Plaintiff observed that there was a bolt on the bottom of the moulder on which the safety guard hinged, but that the moulder's safety guard was held in place with a bungee cord, and that it would have been preferable for the guard to be held in place with a handle or lock down lever. Plaintiff's Deposition Tr. at 129–30. Plaintiff further testified that although the bungee cord held the safety guard in place when the moulder was not operating, the vibration of the machine when operating would make the guard fall out of place, thus exposing a worker's hands to the machine's rotating cutting heads while in operation. *Id.* at 137–38. Plaintiff also testified he understood that working around the exposed cutter heads on the moulding machine posed a safety hazard. *Id.* at 202–03.

Plaintiff's testimony that he was trained to operate a wood moulding machine, had more than two years experience operating wood moulding machines, and was aware of and appreciated the safety hazard involved in operating a wood moulding machine, particularly without proper safety guards, establishes Plaintiff's awareness of the danger posed by the wood moulder. As such, the absence of any point of operation warning regarding the safety guards cannot be said to be a legally cognizable cause of Plaintiff's injury. Accordingly,

---

**6.** References to "Wick Deposition Tr." are to the page number of the transcript of Plaintiff's November 17, 2008 deposition, a copy of which is filed as Defendant's Exh. M.

summary judgment on Plaintiff's failure to warn claim should be GRANTED.

### 2. Negligence

■■■ Although Plaintiff asserts his design defect claim under theories of strict products liability and negligence, the same *prima facie* case is required under both theories. *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 62–63 (2d Cir.2002) (citing *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 639 N.Y.S.2d 250, 662 N.E.2d 730, 735 (1995)) ("In general, . . . the strict liability concept of 'defective design' is functionally synonymous with the earlier negligence concept of unreasonable designing." (internal citation omitted)), *cert. denied*, 537 U.S. 1019, 123 S.Ct. 539, 154 L.Ed.2d 427 (2002). In particular, the decisive question for both strict liability and negligent design causes of action is whether the evidence establishes the product "was 'not reasonably safe' as *Voss* defines the term." *Adams v. Genie Industries, Inc.*, 14 N.Y.3d 535, 903 N.Y.S.2d 318, 929 N.E.2d 380, 384 (2010). Specifically, the Court of Appeals defines a "not reasonably safe" product as

> a product which, if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner.

*Voss*, 463 N.Y.S.2d 398, 450 N.E.2d at 208.

Further, a "defectively designed product" is

> one which, at the time it leaves the seller's hands, is in a condition not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its intended use; that is one whose utility does not outweigh the danger inherent in its introduction into the stream of commerce.

*Voss*, 463 N.Y.S.2d 398, 450 N.E.2d at 207.

Here, as discussed, Discussion, *supra*, at 102–04, Plaintiff is unable to establish a *prima facie* case of design defect under a strict products liability theory, because the evidence establishes that the moulder was, upon leaving the manufacturer's hands, reasonably safe as defined in *Voss*. Plaintiff is thus unable to establish a *prima facie* case of design defect under a negligence theory. *Adams*, 903 N.Y.S.2d 318, 929 N.E.2d at 384.

Defendant's Motion should be GRANTED as to the negligent design claim.

### 3. Breach of Warranty

■■■ Plaintiff alleges Defendant made both express and implied warranties with respect to the moulder, and Plaintiff's breach of those warranties caused Plaintiff's injuries. Complaint ¶¶ 20–21. Although Defendant moves for summary judgment of all Plaintiff's claims, Defendant does not present any argument in direct support of summary judgment on Plaintiff's breach of warranty claims, asserting instead that "the plaintiff's product liability case has been essentially narrowed to the theory that the Diehl Machine was defectively designed because it did not incorporate hand wheels and/or lock down levers as safety devices, and as a result thereof, this defective design proximately caused the injuries sustained by the plaintiff." Defendant's Memorandum at 5–6. Not only has Plaintiff failed to argue that Defendant is not moving for summary judgment of the breach of warranty claims, thereby permitting the court to, in its discretion, deem such claim abandoned, *Kuebel*, 2010 WL 1930659 at *1, but resolution of Plaintiff's breach of warranty claims turns on the same facts and law as Plaintiff's strict products liability and negligence claims, *i.e.*, whether the moulder was defective when it left the manufacturer's control. Specifically, a design defect cause of action requires that the alleged product flaw arise from the manufacturer's

intentional decision to configure the product in a particular way, *Denny*, 639 N.Y.S.2d 250, 662 N.E.2d at 735 n. 3, whereas the breach of warranty claim "inquiry focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." *Id.*, 639 N.Y.S.2d 250, 662 N.E.2d at 736.

Privity between the manufacturer of an alleged defective product and the end user is not required to sustain a claim for breach of express warranty. *Randy Knitwear v. American Cyanamid Co.*, 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399, 403 (1962). Plaintiff nevertheless cannot rely upon any express warranty because Plaintiff has not identified any express warranty on which Plaintiff relied in using the moulder. *See CBS Inc. v. Ziff–Davis Pub. Co.*, 75 N.Y.2d 496, 554 N.Y.S.2d 449, 553 N.E.2d 997, 1003–04 (N.Y.1990) ("to entitle the plaintiff to maintain an action for breach of an express warranty, it must be established that the warranty was relied on." (internal quotation marks omitted)). Because Plaintiff has not identified any express warranty on which Plaintiff relied in using the moulder, Plaintiff has failed to state a claim based on breach of express warranty.

With regard to Plaintiff's claimed breach of implied warranty, absent any privity of contract between Plaintiff and Defendant, such claim cannot be sustained as a matter of law except to recover for personal injuries. *Jaffee Assoc. v. Bilsco Auto Serv.*, 58 N.Y.2d 993, 461 N.Y.S.2d 1007, 448 N.E.2d 792, 792 (1983) ("there being no privity between the purchaser and the defendant [manufacturer] there can be no implied warranty."). Further, although here Plaintiff sues to recover for personal injuries, the substantial modification defense bars a breach of implied warranty claim. *See* N.Y. U.C.C. § 2–314

(McKinney 2004), Official Comment 13 ("an affirmative showing by the seller that the loss resulted from some action or even following his own delivery of the goods can operate as a defense"); *see also Tardella v. RJR Nabisco, Inc.*, 178 A.D.2d 737, 576 N.Y.S.2d 965, 966–67 (3d Dep't.1991) (holding an injured consumer must prove product was defective or unwholesome and that defect or unwholesome condition existed when product left defendant manufacturer's possession or control). Here, having established that the moulder was not in a defective condition upon leaving the manufacturer's control, Discussion, *supra*, at 102–04, Defendant is also entitled to summary judgment on Plaintiff's claim for breach of implied warranty.

Accordingly, Defendant's Motion seeking summary judgment should be GRANTED. Should, however, the district judge disagree with this recommendation, the court addresses Defendant's alternative argument seeking to strike as disqualified Plaintiff's expert witness.

## 2. Expert Witness

As an alternative to summary judgment, Defendant challenges, under Fed. R. Evid. 702 ("Rule 702"), Plaintiff's expert witness Rowland as unqualified to render an opinion on wood moulding machines. Defendant's Memorandum at 11–16. According to Defendant, Rowland has no experience with wood moulding machines, aside from Rowland's examination of the machine on which Plaintiff was injured on June 21, 2006. *Id.* at 14. Rather Rowland's experience is in the field of motor vehicles, including vehicle engineering, towing, recovery, and floor mats, as well as in aircraft brakes, cement mixers, and steering columns, and Rowland has never testified as an expert in machine warnings, or design cases, nor been involved in any industry committees or rule

making procedures regarding wood moulders, such that Rowland is unqualified to offer an expert opinion on the moulder at issue. *Id.* Defendant further asserts that Rowland does not identify the methodology he purportedly used to assess the moulder, such that Rowland's opinion regarding the safety devices is "purely speculative, totally unreliable, and, in fact, wrong." *Id.* at 15. Plaintiff, in opposition to Defendant's motion, states that issues of fact preclude a determination as to Rowland's qualifications as an expert witness, and that Rowland's opinion is not novel, but "based on well-recognized scientific and engineering principles." Plaintiff's Memorandum at 3.

Rule 702 requires that to testify as an expert, the witness must qualify as an expert by virtue of "knowledge, skill, experience, training, or education that will assist the jury in understanding evidence or determining a fact in issue." Fed. R. Evid. 702. The court has broad discretion in exercising the "gatekeeping" functions of whether a witness is qualified as an expert, as well as whether the expert's opinion is relevant and reliable. *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141, 153, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

Preliminarily, the court observes that Defendant does not dispute Rowland's conclusion in his report that at the time of Plaintiff's accident, the condition of the moulding machine, specifically, the use of a bungee cord to hold in place the safety guard, was not reasonably safe. As such, the Rowland Report is neither relevant nor necessary to assist the finder of fact in resolving this issue of liability in this action. *Dreyer v. Ryder Automotive Carrier Group, Inc.,* 367 F.Supp.2d 413, 417 (W.D.N.Y.2005) (holding insofar as expert witness's opinion was based on common sense and facts obvious to any reasonable

adult, the opinion would not assist the trier of fact).

For this reason, Defendant's motion to preclude the report should thus be DISMISSED as moot.

### 3. Cross–Claim

Should the District Judge agree with the recommendation that summary judgment should be granted in favor of Defendant on all of Plaintiff's claims, then Defendant's third-party claim against F & W will be rendered moot and should be DISMISSED as moot.

### *CONCLUSION*

Based on the foregoing, Defendant's motion for summary judgment (Doc. No. 53), should be GRANTED, the cross-claim against F & W should be DISMISSED as moot, and the Clerk of the Court should be directed to close the file. Alternatively, Defendant's motion challenging the qualifications of Plaintiff's expert witness to render an opinion should be DISMISSED as moot.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88

L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.