[929 NE2d 380, 903 NYS2d 318]

WALTER ADAMS, Respondent, v GENIE INDUSTRIES, INC., Appellant.

Argued March 23, 2010; decided May 11, 2010

## POINTS OF COUNSEL

*Wilson Elser Moskowitz Edelman & Dicker LLP*, New York City (*Richard E. Lerner, Philip A. Tumbarello* and *Patrick J. Lawless* of counsel), for appellant. I. A manufacturer does not owe a continuing duty to "remedy" a product after it has left the manufacturer's hands. (*Braniff Airways, Inc. v Curtiss-Wright Corp.*, 411 F2d 451; *Cover v Cohen*, 61 NY2d 261; *Magadan v Interlake Packaging Corp.*, 45 AD3d 650; *Power v Crown Equip. Corp.*, 189 AD2d 310; *DeGroat v Consolidated Rail Corp.*, 298 AD2d 273; *Village of Groton v Tokheim Corp.*, 202 AD2d 728; *Frank v DaimlerChrysler Corp.*, 292 AD2d 118; *Andrea v du Pont de Nemours & Co.*, 289 AD2d 1039; *Kavanaugh v Nussbaum*, 71 NY2d 535; *Weigl v Quincy Specialties Co.*, 1 AD3d 132.) II. The law of this state is that a products liability plaintiff must show that a safer alternative design was *actually available* at the time of sale, and not merely that a safer design was *theoretically* feasible. (*Magadan v Interlake Packaging Corp.*, 45 AD3d 650; *McCarthy v Handel*, 297 AD2d 444; *Terry v Erie Foundry Co.*, 235 AD2d 414; *Bouter v Durand-Wayland, Inc.*, 221 AD2d 902; *Moore v Deere & Co.*, 195 AD2d 1044; *Bolm v Triumph Corp.*, 71 AD2d 429; *Voss v Black & Decker Mfg. Co.*, 59 NY2d 102; *People v Wesley*, 83 NY2d 417; *Frye v United States*, 293 F 1013; *McCarthy v Handel*, 297 AD2d 444; *Johnson v Manitowoc Boom Trucks, Inc.*, 484 F3d 426.)

*Gentile & Associates*, New York City (*Laura E. Gentile* of counsel), and *Gurfein Douglas LLP* (*Richard Gurfein* and *Steven Aripotch* of counsel) for respondent. I. The jury verdict was amply supported by plaintiff's proof based on strict liability and pre-sale negligent design. (*Voss v Black & Decker Mfg. Co.*, 59

NY2d 102; *Adamo v Brown & Williamson Tobacco Corp.*, 11 NY3d 545; *Liriano v Hobart Corp.*, 92 NY2d 232; *O'Bara v Piekos*, 161 AD2d 1118; *Sawyer v Dreis & Krump Mfg. Co.*, 67 NY2d 328; *Liquore v Tri-Arc Mfg. Co.*, 32 AD3d 905; *Miner v Long Is. Light. Co.*, 40 NY2d 372; *Mercogliano v Sears, Roebuck & Co.*, 303 AD2d 566; *Feiner v Calvin Klein, Ltd.*, 157 AD2d 501; *Magadan v Interlake Packaging Corp.*, 45 AD3d 650.) II. Defendant asks this Court to stray beyond its jurisdiction by asking the Court to determine whether or not there is a post-sale duty of remedy. (*Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801; *Ogino v Black*, 304 NY 872; *Mary Lincoln Candies, Inc. v Department of Labor*, 289 NY 262; *Coatsworth v Lehigh Val. Ry. Co.*, 156 NY 451; *Lunney v Prodigy Servs. Co.*, 94 NY2d 242; *Bradley v Earl B. Feiden, Inc.*, 8 NY3d 265; *Kahl v Loffredo*, 221 AD2d 679.) III. The pre-sale claims are not tainted by the post-sale claim. (*Kavanaugh v Nussbaum*, 71 NY2d 535; *Weigl v Quincy Specialties Co.*, 1 AD3d 132; *New England Mut. Life Ins. Co. v Detectives' Endowment Assn. of Police Dept. of City of N.Y.*, 174 AD2d 454, 79 NY2d 851; *Doty v Navistar Intl. Transp. Corp.*, 219 AD2d 32, 89 NY2d 802; *Heller v 83rd St. Invs. Ltd. Partnership*, 228 AD2d 371; *Caprara v Chrysler Corp.*, 52 NY2d 114; *Silfverchiold v Hut Cab Corp.*, 251 AD2d 121; *Bradley v Earl B. Feiden, Inc.*, 8 NY3d 265; *Kroupova v Hill*, 242 AD2d 218; *Luce v St. Peter's Hosp.*, 85 AD2d 194.) IV. Defendant cannot complain about plaintiff's discussion of decals and the instruction manual because defendant injected that issue into trial, forcing plaintiff to respond. V. Defendant's post-sale duty was breached by its failure to remedy the defect with the same interlock it could have and should have installed prior to the sale of the machine. (*Romero v International Harvester Co.*, 979 F2d 1444; *Smith v Firestone Tire & Rubber Co.*, 755 F2d 129; *Syrie v Knoll Intl.*, 748 F2d 304; *Braniff Airways, Inc. v Curtiss-Wright Corp.*, 411 F2d 451, 396 US 959, 424 F2d 427, 400 US 829; *Savage Scripto-Tokai Corp.*, 266 F Supp 2d 344; *Bastian v TPI Corp.*, 663 F Supp 474; *Gracyalny v Westinghouse Elec. Corp.*, 723 F2d 1311; *Cover v Cohen*, 61 NY2d 261; *Power v Crown Equip. Corp.*, 189 AD2d 310; *Smith v Louis Berkman Co.*, 894 F Supp 1084.) VI. Public policy favors a continuing duty of care. (*Liriano v Hobart Corp.*, 92 NY2d 232.)

*Goldberg Segalla LLP*, Buffalo (*Neil A. Goldberg, Matthew S. Lerner* and *Bryan Richmond* of counsel), and *Hugh F. Young, Jr.*, Reston, Virginia, for Product Liability Advisory Council, Inc., amicus curiae. I. New York courts and courts throughout

the nation do not recognize a duty to recall or retrofit, except in highly specialized markets. (*Cover v Cohen,* 61 NY2d 261; *Eschenburg v Navistar Intl. Transp. Corp.,* 829 F Supp 210; *Romero v International Harvester Co.,* 979 F2d 1444; *Estate of Kimmel v Clark Equip. Co.,* 773 F Supp 828; *Wallace v Dorsey Trailers Southeast, Inc.,* 849 F2d 341; *Smith v Firestone Tire & Rubber Co.,* 755 F2d 129; *Syrie v Knoll Intl.,* 748 F2d 304; *National Women's Health Network, Inc. v A. H. Robins Co., Inc.,* 545 F Supp 1177; *Braniff Airways, Inc. v Curtiss-Wright Corp.,* 411 F2d 451; *Noel v United Aircraft Corp.,* 342 F2d 232.) II. The Appellate Division's decision and order should be reversed because it is based on an overstatement of case law and essentially imposes a new duty of care without considering traditional factors. (*Cover v Cohen,* 61 NY2d 261; *Hamilton v Beretta U.S.A. Corp.,* 96 NY2d 222.)

**OPINION OF THE COURT**

SMITH, J.

Plaintiff sues for injuries sustained when he fell from a personnel lift designed, manufactured and sold by defendant, Genie Industries, Inc. The jury found that the product was defectively designed, and we hold that the evidence was sufficient to support that finding. We agree with Genie that the trial court erred in submitting to the jury, as an alternative ground for liability, the question of whether Genie was negligent in failing to retrofit or recall the product after its sale, but we hold that under the circumstances of this case that error was harmless.

I

The personnel lift at issue consists, essentially, of a basket in which one person can stand, mounted on a narrow, wheeled base. The basket is attached to a vertical cylinder, and wired so that the person in the basket can cause it to go up and down by pressing buttons. Genie sold the lift to plaintiff's employer in 1986. On July 29, 1997, plaintiff, a maintenance man, was using it to install a block and tackle in an elevated spot. When he was about 12 feet off the ground, the lift tipped over and plaintiff fell to the floor.

There was evidence from which the jury could find that the use of outriggers would have prevented the accident. Outriggers are essentially legs that extend diagonally from the base of the personnel lift to the floor, thus spreading the weight of the lift

and making it more stable. Genie sold the lift with outriggers, but the outriggers were detachable, so that the lift, when not in use, could be moved through narrow openings like doorways. A label attached to the lift warns: "All outriggers must be installed before operating." But it seems that plaintiff's employer ignored the warning, and that the outriggers were lost—at least, none were to be found on the day of plaintiff's accident.

Plaintiff's principal theory, and the only one we need to consider, is that the design of the lift was defective because the outriggers were not "interlocked." An interlock is a means of interrupting automatically the operation of a machine; it is familiar, for example, to users of washing machines and elevators that cannot run when their doors are open. Plaintiff claims that Genie's personnel lift should have been designed similarly, so that it could not be operated unless the outriggers were in place.

The trial court submitted a number of questions to the jury, among them whether the product was defective; whether Genie was negligent in putting it on the market in 1986; and whether Genie was negligent "from June 1986 until plaintiff's accident in July 1997." The jury answered all three of these questions yes, found in plaintiff's favor on other liability-related issues, and awarded damages including $100,000 for past pain and suffering and $400,000 for future pain and suffering. The trial court denied defendant's motion to set the verdict aside, but granted plaintiff's motion for additur, ordering a new trial on the issue of past and future pain and suffering damages unless Genie agreed to increase those awards to $500,000 and $750,000 respectively (2007 NY Slip Op 34459[U]). The Appellate Division affirmed (53 AD3d 415 [2008]). Following the affirmance, Genie stipulated to the additur, and the Appellate Division granted Genie leave to appeal to this Court.

## II

Before turning to the merits, we must decide whether Genie has a right to appeal from the Appellate Division's order. Plaintiff argues that it does not, asserting that, because Genie agreed to the additur, it is not an "aggrieved party" within the meaning of CPLR 5511 ("An aggrieved party or a person substituted for him may appeal from any appealable judgment or order except one entered upon the default of the aggrieved party"). We reject plaintiff's argument.

It has long been and remains the rule that parties who stipulate to a modification of damages as an alternative to a new

trial are not aggrieved by that modification and may not appeal from it (*Dudley v Perkins*, 235 NY 448, 457 [1923]). Here, however, Genie is not seeking to appeal from the modification—the additur—to which it consented. It raises no issue as to the additur in this Court, but claims that it has no liability to plaintiff at all—that the case should never have been submitted to the jury—or, in the alternative, that it is entitled to a new liability trial. The Appellate Division rejected these arguments, which Genie has never agreed to abandon, and it therefore seems logical to conclude that Genie is aggrieved by the Appellate Division's order.

Plaintiff's contrary argument, however, finds support in several of our decisions, which apply the *Dudley v Perkins* rule more broadly than it is stated in *Dudley*. In *Batavia Turf Farms v County of Genesee* (91 NY2d 906 [1998]), we dismissed an appeal in a brief entry, saying:

"[A] party who, as a result of a conditional order, has stipulated at the trial or appellate court to a reduction in damages in lieu of a new trial on a cause of action, foregoes all further review of other issues raised by that order, including those pertaining to any other cause of action, and is therefore not a party aggrieved."

In *Batavia*, we cited a footnote in *Whitfield v City of New York* (90 NY2d 777, 780 n [1997]), which states the rule similarly and cites in turn several earlier cases. Those earlier cases (*Plotkin v New York City Health & Hosps. Corp.*, 88 NY2d 917 [1996]; *Sharrow v Dick Corp.*, 84 NY2d 976 [1994]; *Sogg v American Airlines*, 83 NY2d 846 [1994]; *Gilroy v American Broadcasting Co.*, 43 NY2d 825 [1977]) do not explicitly state, but are consistent with, *Batavia*'s and *Whitfield*'s broader version of the rule.

The rationale underlying this broader application of *Dudley*, by which a stipulation on one issue could foreclose an appeal on other, unrelated issues, was that the stipulation did not merely resolve an issue, but also fulfilled a condition for the existence of the order in question. It was thought that a party who had consented to the order's existence could not claim to be aggrieved by any part of it. However, we now reexamine the *Batavia/Whitfield* rule, and conclude that it is not justified. It is unfair to bar a party from raising legitimate appellate issues simply because that party has made an unrelated agreement on the amount of damages. Indeed, the *Batavia* rule may operate as a trap; parties stipulating to additur and remittitur are likely

not to foresee the counterintuitive result that *all* their appellate claims will be forfeited.

Thus, *Batavia* and the *Whitfield* footnote, to the extent that they go beyond the original *Dudley v Perkins* holding, should no longer be followed. Genie is a party aggrieved, and we proceed to consider the merits of its appeal.

### III

Our leading case on what is required to prove a design defect is *Voss v Black & Decker Mfg. Co.* (59 NY2d 102 [1983]). We said in *Voss*:

> "In order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in caus- ing plaintiff's injury." (*Id.* at 107.)

We explained in *Voss* what it means to say that a product is "not reasonably safe." The issue, we said, is: "whether . . . if the design defect were known at the time of manufacture, a rea- sonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." (*Id.* at 108.)

We added:

> "It will be for the jury to decide whether a product was not reasonably safe in light of all the evidence presented by both the plaintiff and defendant. The plaintiff, of course, is under an obligation to present evidence that the product, as designed, was not rea- sonably safe because there was a substantial likeli- hood of harm and it was feasible to design the prod- uct in a safer manner. The defendant manufacturer, on the other hand, may present evidence in opposi- tion seeking to show that the product is a safe prod- uct—that is, one whose utility outweighs its risks when the product has been designed so that the risks are reduced to the greatest extent possible while retaining the product's inherent usefulness at an acceptable cost." (*Id.* [citations omitted].)

*Voss* was a strict products liability case, and we tried in *Voss* to draw a distinction between such cases and cases based on the

allegedly negligent design of products (*see id.* at 107). We later acknowledged, however, that that line-drawing effort had not been successful. In *Denny v Ford Motor Co.* (87 NY2d 248, 258 [1995]), we quoted with approval the remark of a commentator that "[i]n general, . . . the strict liability concept of 'defective design' [is] functionally synonymous with the earlier negligence concept of unreasonable designing" (Schwartz, *New Products, Old Products, Evolving Law, Retroactive, Law,* 58 NYU L Rev 796, 803 [1983]). Thus, while plaintiff here has pleaded both strict liability and negligent design causes of action, the standards set forth in *Voss* apply to both. The decisive question is whether plaintiff has produced enough evidence for a jury to find that Genie's product—a personnel lift without interlocked outriggers—was "not reasonably safe" as *Voss* defines the term.

The evidence clearly showed that the use of outriggers would have made the product safer. Expert testimony explained that outriggers would have expanded the product's "footprint," making it more stable by distributing its weight over a wider area. Indeed, Genie's own label warned against using the product without outriggers. It is thus reasonable to conclude that an interlock, making use without outriggers impossible, would have increased the safety of the product.

Plaintiff also offered evidence from which a jury could find that, in 1986 when the product was sold, it was technologically possible, at minimal cost, to design the product with interlocked outriggers. A qualified expert so testified, and illustrated his point with a model that he had created of Genie's machine, to which he had added a half dozen switches, of a kind available in the late 1980s for $20 to $25 each. The switches, as the expert demonstrated to the jury, effectively prevented the machine from operating without outriggers in place. Genie pointed out differences between the expert's model and its machine, but none so dramatic as to preclude the jury from finding that the model fairly corresponded to the product in dispute. Plaintiff's expert also testified that the idea of an interlock was not novel in 1986; indeed, he testified without contradiction that the first patent for an interlock and interlocking device was issued in 1868.

Genie points out that a finding that its product was "not reasonably safe" may not rest merely on a showing that a safer product was theoretically possible at the time the machine was made. In this Genie is correct, but plaintiff's evidence showed more than a theoretical possibility of a safer machine. A former

employee of Genie testified that he had mentioned the idea of interlocked outriggers to the company's vice-president of manufacturing in 1985—the year before the machine in dispute was sold—and had obtained approval to present the idea to a committee setting standards for the industry. Perhaps even this evidence, if there were no more, would not suffice, because a proposed change in standards proves "only that a better way was thought possible, not that balancing risks and benefits of both the existing way was not reasonably safe" (*Cover v Cohen*, 61 NY2d 261, 272 [1984]). But there was more: plaintiff's evidence showed not only that the better way was "thought possible," but that it had actually been implemented. The former Genie employee testified that in 1985 he had seen, and Genie had purchased, a competitor's personnel lift with interlocked outriggers.

This evidence, we conclude, was enough to support the jury's verdict that the product Genie sold to plaintiff's employer in 1986 was "not reasonably safe." It is true that there was also evidence from which the jury could have reached the opposite conclusion. Plaintiff did not show that interlocked outriggers were commonly used—or, indeed, that more than one manufacturer included them in its product—in 1986. And Genie showed that the industry standard for personnel lifts promulgated by the American National Standards Institute did not call for interlocked outriggers in 1986. But the weight to be given the evidence for each side was up to the jury. Considering the record as a whole, we cannot say that the verdict in plaintiff's favor on the strict liability and negligent design claims is without support.

## IV

Genie argues that the trial court erred in submitting to the jury the question of whether Genie's post-sale conduct—its conduct between 1986, when it sold the product, and 1997, when plaintiff was injured—was negligent. We agree, but find the error to be harmless.

Our decisions make clear that, in general, the duty of the seller of a product who discovers, after the sale, risks that were not known beforehand is a duty to warn (*Cover*, 61 NY2d at 274-275; *see also Liriano v Hobart Corp.*, 92 NY2d 232, 240 [1998]). In this case, there can be no successful claim that Genie breached any duty to warn, either pre-sale or post-sale. Supreme Court held, on a pretrial motion, that the warning

contained in Genie's product label was adequate, and that holding is not challenged here. We have never imposed a post-sale duty to recall or retrofit a product, and the facts of this case provide no justification for creating one (*cf. Braniff Airways, Inc. v Curtiss-Wright Corp.*, 411 F2d 451, 453 [2d Cir 1969] [duty "at least" to warn of a defect discovered post-sale in an airplane engine]). Thus the jury should not have been permitted to find that Genie was negligent in failing to recall or retrofit its product after the 1986 sale.

The trial court's error in submitting this theory to the jury, however, had no impact on the outcome of the case. Plaintiff's post-sale negligence claim, as presented at trial, was no more than a duplicate of his design defect and negligent design claims. Plaintiff presented no evidence of any facts that came to Genie's attention after the sale that might have triggered a new duty; plaintiff merely asserted that Genie should have recalled or retrofitted the personnel lift for the same reasons that it should not have sold it in the first place—principally, because the outriggers were not interlocked. Genie points to no evidence admitted on the post-sale negligence claim that would have been inadmissible on the other claims, and identifies no way in which the court's error in submitting one claim might have tainted the jury's verdict on the others. The error was harmless.

## V

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

Order affirmed, etc.