ELISSA MOTELSON et al., Respondents, v FORD MOTOR COMPANY et al., Appellants. (Action No. 1.) MICHAEL J. MOTELSON et al., Respondents, v FORD MOTOR COMPANY et al., Appellants. (Action No. 2.) [957 NYS2d 341]—

958

The appeals from so much of the intermediate amended order as denied those branches of the appellants' respective motions which were pursuant to CPLR 4404 to set aside the jury verdict in favor of the plaintiffs in action No. 2 and against them and for judgment as a matter of law or, alternatively, to set aside the jury verdict in favor of the plaintiffs in action No. 2 and against them as contrary to the weight of the evidence and for a new trial, must be dismissed, because the right of direct appeal therefrom terminated with the entry of judgment in action No. 2 (*see Matter of Aho*, 39 NY2d 241, 248 [1976]). The issues raised on the appeals from that portion of the amended order are brought up for review and have been considered on the appeals from the order and judgment (*see* CPLR 5501 [a] [1]).

On July 1, 2000, the plaintiffs' decedent, Steven Motelson, was driving a 1998 Ford Explorer sports utility vehicle, manufactured by Ford Motor Company (hereinafter Ford), owned by Ford Motor Credit Company (hereinafter Ford Credit), and leased to Steven Motelson's business, Dome Property Management, Inc. Steven Motelson's son, Gary Motelson, his grandsons Brian Motelson and Evan Motelson, and a third party, Mitchell Slepian, were passengers in the vehicle. While driving on Route 17, the vehicle accelerated, swerved, and rolled over 3³/₄ times. As a result of the accident, Steven Motelson and Brian Motelson died, and the remaining passengers sustained serious injuries.

Gary Motelson and his wife Elissa Motelson, individually and as administrators of the estate of Brian Motelson, and parents and natural guardians of Evan Motelson, commenced action No. 1 against Ford and Ford Credit. During the pendency of the instant appeal, Gary Motelson died, and Elissa Motelson was substituted for him. Michael J. Motelson, as administrator of the estate of Steven Motelson, and Steven Motelson's wife, Enid Motelson, individually, commenced action No. 2 against Ford and Ford Credit. The Motelsons alleged, inter alia, that (1) the speed control cable of the vehicle was defectively designed, caus-

ing the vehicle to accelerate unexpectedly, (2) the seat belts were defectively designed, and (3) the roof support system was defectively designed, causing the roof to collapse on Steven Motelson's head and causing his death. After trial, the jury found that Evan Motelson and Brian Motelson were not wearing their seatbelts, the front seatbelt system was not defective, and the speed control cable system was not defective. Those findings are not at issue on these appeals. However, the jury found that the roof support system, although reasonably fit for the ordinary purposes for which it was used, was defectively designed, that Ford was negligent in designing, inspecting, and testing it, and that the defect was "a substantial factor in causing Steven Motelson's injury and death."

With respect to damages, the jury found that 100% of the injuries of Brian Motelson and Evan Motelson were attributable to the fact that they were not wearing seatbelts and, therefore, Brian's estate and Evan were not entitled to recover any damages. The jury awarded no damages to Gary Motelson, and no damages to his wife, Elissa Motelson, on her derivative claim. However, Michael J. Motelson, as administrator of the estate of Steven Motelson, was awarded the principal sum of $1,500,000 for loss of earnings, and Enid Motelson was awarded the principal sum of $5,000,000 for economic loss.

The defendants separately moved, inter alia, pursuant to CPLR 4404 to set aside the jury verdict in favor of the plaintiffs in action No. 2 and against them and for judgment as a matter of law or, alternatively, to set aside the jury verdict in favor of the plaintiffs in action No. 2 and against them as contrary to the weight of the evidence and for a new trial. Gary Motelson, Elissa Motelson, and Evan Motelson, as plaintiffs in action No. 1, cross-moved to set aside the jury verdict in favor of the defendants and against them in action No. 1, inter alia, on the ground that Gary Motelson and Evan Motelson suffered emotional distress because they were in Steven Motelson's zone of danger. The Supreme Court concluded that the plaintiffs established liability for Steven Motelson's wrongful death based upon a design defect in the roof of the vehicle and based upon the "second collision doctrine," under which a plaintiff must prove that "the injuries were more severe than they would have been had the product been properly designed." The Supreme Court concluded that the award in the principal sum of $1,500,000 for lost earnings was excessive because the plaintiffs' economic expert estimated that lost earnings amounted only to $1,327,000. Based upon evidence that Steven Motelson intended to expand his business, the Supreme Court further concluded

that the award of $5,000,000 to Enid Motelson for economic loss resulting from Steven Motelson's death was not excessive. However, the award for economic loss was reduced by $1,327,000 to $3,673,000, to avoid duplication. The Supreme Court further concluded that Gary Motelson and Evan Motelson suffered psychiatric injury because they were in Steven Motelson's zone of danger when the roof of the vehicle caused Steven Motelson's fatal head injuries and, therefore, that Gary Motelson, Elissa Motelson, and Evan Motelson were entitled to damages. The plaintiffs in action No. 2 stipulated to accept a reduced award in the principal sums of $1,327,000 for lost earnings and $3,673,000 for economic loss other than lost earnings.

The jury's finding that there was a design defect in the roof of the vehicle, which caused the roof to buckle during the crash and caused Steven Motelson's death, was supported by legally sufficient evidence and the weight of credible evidence (see *Adams v Genie Indus., Inc.*, 14 NY3d 535, 543-544 [2010]; *Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]; *Godfrey v G.E. Capital Auto Lease, Inc.*, 89 AD3d 471, 477 [2011]; *Nicastro v Park*, 113 AD2d 129, 135 [1985]) based, inter alia, on evidence of a safer and feasible design (see *Adams v Genie Indus., Inc.*, 14 NY3d at 543-544), which "would have avoided" Steven Motelson's life-threatening injuries (*Burgos v Lutz*, 128 AD2d 496, 497 [1987]; see *Garcia v Rivera*, 160 AD2d 274, 276-277 [1990]). Contrary to the defendants' contention, the jury's verdict sustaining that cause of action was not inconsistent with its rejection of a breach of warranty cause of action based upon whether the roof was fit for the ordinary purposes for which such system is used (see UCC 2-314 [2] [c]). The verdict sheet and the jury instructions directed the jury to consider these causes of action as separate and distinct, and authorized the jury to reach contrary conclusions on those two causes of action. Under the particular circumstances of this case, the jury could have concluded that the roof was fit for ordinary purposes but not crashworthy due to a design defect (see *Larsen v General Motors Corp.*, 391 F2d 495, 500-501 [8th Cir 1968]; *Bradley v Earl B. Feiden, Inc.*, 8 NY3d 265, 273-274 [2007]).

In addition, the jury's finding that Steven Motelson was not negligent is not inconsistent with its finding that the speed control cable system was not defectively designed. The issue of whether there was a design defect in the speed control cable system was not "inextricably interwoven" with the issue of whether Steven Motelson was at fault in the happening of the accident (see *Pavlou v City of New York*, 8 NY3d 961, 963 [2007]). The plaintiffs bore the burden of proving that the speed

control cable system was defectively designed, while the defendants bore the burden of proving Steven Motelson's comparative negligence (*see* CPLR 1412; PJI3d 1:60). The jury found that the cause of the vehicle rolling onto the median was not proven.

The issue of whether Gary Motelson and Evan Motelson suffered emotional distress because they were placed in Steven Motelson's zone of danger (*see Bovsun v Sanperi*, 61 NY2d 219, 230-231 [1984]) was not submitted to the jury. The jury was instructed that, if it found that the plaintiffs were entitled to recover from the defendants, it "must also include in [the] verdict damages for any mental suffering; emotional, psychological injuries. These are subsumed . . . into the pain and suffering questions" (*see* PJI3d 2:284). However, no separate causes of action sounding in infliction of emotional distress or zone-of-danger damages resulting from Steven Motelson's injuries and death were submitted to the jury. The verdict sheet asked whether the negligent design of the roof was "a substantial factor in causing Steven Motelson's injuries and death," and not whether that defect caused injuries to any other plaintiff. Therefore, the Supreme Court should not have ruled that they were entitled to damages on that theory (*see Pavel Yutsis Physician, P.C. v Staten Is. Univ. Hosp.*, 47 AD3d 781 [2008]).

With respect to damages for Steven Motelson's wrongful death, EPTL 5-4.3 (a) defines damages to be awarded for wrongful death as "such sum" which the factfinder "deems to be fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought." The persons for whom a wrongful death action is brought are the distributees of the decedent (*see DeLuca v Gallo*, 287 AD2d 222, 225 [2001]), who in this case were Steven Motelson's wife, Enid Motelson, and his adult children. The jury awarded wrongful death damages to Enid Motelson, but not to the adult children. Since damages for wrongful death are limited to pecuniary loss, damages for loss of society, affection, conjugal fellowship and consortium are not recoverable. However, pecuniary loss consisting of loss of support, voluntary assistance, and possible inheritance and other incidental expenses, is recoverable (*see Gonzalez v New York City Hous. Auth.*, 77 NY2d 663, 667 [1991]).

The defendants do not contest that the plaintiffs established lost earnings of $1,327,000, and $174,599 for loss of services, for a total of $1,501,599 in damages. The calculation of damages for loss of inheritance is generally a question of fact for the jury, and does not require "dollars and cents proof" (*Parilis v Feinstein*, 49 NY2d 984, 985 [1980]). The award may be based upon

the decedent's age, character, earning capacity, life expectancy, and the circumstances of the distributees (*see Facilla v New York City Health & Hosps. Corp.*, 221 AD2d 498 [1995]). Under all of the circumstances adduced at the trial, an award to Enid Motelson in the principal sum of $674,599 for economic loss, consisting of $174,599 for loss of services, and an additional $500,000 for loss of inheritance, constitutes reasonable compensation (*see* CPLR 5501).

The parties' remaining contentions are either without merit (*see Wengenroth v Formula Equip. Leasing, Inc.*, 11 AD3d 677, 680 [2004]; *Winckel v Atlantic Rentals & Sales*, 159 AD2d 124, 129 [1990]; *cf. Starobin v Niagara Mach. & Tool Works Corp.*, 172 AD2d 64, 65 [1991]; *Bickram v Case I.H*, 712 F Supp 18, 22 [ED NY 1989]), or not properly before this Court. Florio, J.P., Leventhal, Austin and Roman, JJ., concur.