===================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-------------------------------------------------------------------
No. 138
Manuel Reis, &c.,
          Respondent,
        v.
Volvo Cars of North America, et
al.,
          Appellants.
(And a Third-Party Action.)


          Roy L. Reardon, for appellants.
          Steven R. Pounian, for respondent.


SMITH, J.:

          The standard jury charge in malpractice actions tells

the jury that a defendant who has or claims to have "special

skills" in a trade or profession is required to use the same

degree of skill and care that others in the same trade or

profession would reasonably use in the same situation (New York

Pattern Jury Instructions [PJI] 2:15).  Here, the trial court

- 1 -

erred by giving this charge in a case alleging not malpractice, but defective design of a product.  We hold that in the situation presented here the error requires reversal and a new trial.

**I**

On May 24, 2002, plaintiff's friend, Americo Silva, was showing plaintiff a 1987 Volvo station wagon that Silva had recently bought.  The car had a manual transmission.  As the two stood in front of the car, looking under the hood, Silva asked plaintiff if he would like to see the engine running.  Plaintiff said he would, and Silva walked to the driver's side door, leaned into the car and turned the key in the ignition.  The car lurched forward, pinning plaintiff against a wall and causing him to lose his left leg.

Plaintiff brought this action claiming that the car's manufacturer, Volvo, was at fault for the accident.  (We use "Volvo" to refer collectively to both defendants-appellants, which are affiliated corporations.)  There was evidence that, when the car was manufactured, it was well known in the automobile industry that a manual transmission car could, if left in a forward gear when it was parked, lurch as this one did when the engine was turned on.  Plaintiff asserted that Volvo should have equipped the car with a "starter interlock," which would have made it impossible to start the engine while the car was in gear, or at least should have warned users of the car about the danger.

Volvo moved for summary judgment.  Supreme Court denied the motion, Volvo appealed to the Appellate Division, and the case went to trial while the appeal was pending.

Much of the proof at trial concerned the practices of other car manufacturers at the time the car that injured plaintiff was made.  Plaintiff presented evidence that General Motors, Ford and Toyota used starter interlocks on their manual transmission cars in the 1987 model year (though Chrysler did not), and that as a result most 1987 manual transmission cars sold in the United States had starter interlocks.  Volvo presented evidence that many other manufacturers did not use an interlock, and defended its own decision not to do so: According to Volvo's witnesses, the chance of an accident like the one that happened here was extremely small, and the interlock had possible disadvantages.  In some situations, they said, the ability to start a car in gear might help avoid an accident.

At plaintiff's request, and over Volvo's objection, the court included PJI 2:15 ("Common Law Standard of Care - Defendant Having Special Knowledge") and PJI 2:16 ("Common Law Standard of Care -- Customary Business Practices") in its charge to the jury.  It also gave the jury a verdict sheet, to which Volvo made no objection.  The verdict sheet presented plaintiff's two theories of liability -- absence of an interlock and failure to warn -- both as negligence and as design defect claims.  As to the absence of an interlock (our main concern here), the jury was

asked, "Was the defendant Volvo negligent in failing to use a starter interlock device in its vehicle?" and also "Was defendant Volvo's vehicle not reasonably safe in that it was defective without a starter interlock device?". Our decision in Denny v Ford Motor Co., 87 NY2d 248, 258 [1995]) had strongly implied, and our decision in Adams v Genie Indus., Inc. (14 NY3d 535, 542-543 [2010]) later confirmed, that these two questions were redundant, because claims for negligent design and for defective design are essentially identical. However, no party pointed out the redundancy to the trial court.

The jury answered "yes" to the question of whether Volvo was negligent in omitting the interlock, but "no" to the question of whether the product was "not reasonably safe" and thus "defective" without the device. No party complained of the inconsistency in the verdict before the jury was discharged. The jury also found for plaintiff on his failure to warn claims. It awarded damages totaling, after the addition of interest, roughly $10,000,000.

After the verdict was rendered, but before judgment was entered, the Appellate Division decided Volvo's appeal from Supreme Court's order denying summary judgment. It modified the order by dismissing the failure to warn claims, holding that "there is no evidence that any such failure was a proximate cause of the injury," and otherwise affirmed (Reis v Volvo Cars of N. Am., Inc., 73 AD3d 420, 423 [1st Dept 2010]). The trial court

then set aside the verdict on the failure to warn claims, but it entered judgment on the design defect claim in plaintiff's favor.

Both parties appealed the judgment to the Appellate Division, which modified it in a way not relevant here and otherwise affirmed, with two Justices dissenting (Reis v Volvo Cars of N. Am., 105 AD3d 663 [1st Dept 2013]). The Appellate Division held, among other things, that "[t]he trial court properly set aside the jury's verdict on plaintiff's failure to warn claim" (id. at 663), but that the court "did not commit error by charging the jury on special knowledge (PJI 2:15) and customary business practices (PJI 2:16) as tailored to the facts of this case" (id. at 664). The dissenting Justices would have remanded for a new trial on the ground that PJI 2:16 was given in error. The dissenters found "no evidence of a customary procedure or policy that was 'reflective of an industry standard or a generally-accepted safety practice'" (id. at 665 [Abdus-Salaam, J., dissenting, quoting 1A PJI3d 2:16 at 260 [2013]).

Volvo appeals to this Court as of right, pursuant to CPLR 5601(a). Plaintiff also sought to appeal as of right, but we granted Volvo's motion to dismiss plaintiff's appeal (21 NY3d 1051 [2013]).

It may be useful to explain briefly what is and is not before us. CPLR 5601(a) allows an appeal as of right from an Appellate Division order only where there is a two-Justice

dissent "in favor of the party taking such appeal."  We dismissed plaintiff's appeal from so much of the Appellate Division order as dismissed his failure to warn claims because the Appellate Division dissent was not in plaintiff's favor.  Plaintiff did not move for permission to appeal under CPLR 5602(a), and therefore the part of the order unfavorable to plaintiff is now beyond our review.  Plaintiff suggests that his failure to warn claims may furnish an alternative ground for affirming the Appellate Division's order, but the suggestion is incorrect.  The failure to warn claims have been dismissed, and may not be reinstated in the absence of a properly taken appeal from the dismissal.

On the other hand, an appeal properly taken under CPLR 5601(a) brings up for review all issues that the Appellate Division decided adversely to the appellant, even those on which no Appellate Division justice dissented (Holtslander v C.W. Whalen & Sons, 69 NY2d 1016 [1987]; Karger, Powers of the New York Court of Appeals § 6:6 at 207-208 [3d ed revd 2005]).  This rule benefits Volvo here, because while we do not agree with the Appellate Division dissenters that PJI 2:16 was improperly given, we do find error in the court's decision to charge PJI 2:15.  We therefore reverse and remit the case for a new trial.

**II**

The court gave PJI 2:15 to the jury in the following language:

> "A manufacturer like Volvo that has
> special training and experience in designing

and manufacturing automobiles, when acting in that capacity, has a duty to use the same degree of skill and care that others in the business of manufacturing and selling automobiles in the United States would reasonably use in the same situation.

"Volvo has special skills in designing and manufacturing automobiles. If you decide that Volvo did use the same degree of skill and care that other manufacturers selling automobiles in the United States would reasonably use in the same situation, then you must find that Volvo was not negligent, no matter what resulted from defendant's conduct.

"On the other hand, if you decide that Volvo did not use the same degree of skill and care, then you must find that Volvo was negligent."

This charge should not have been given in this case. It was designed for malpractice cases. As the Committee on Pattern Jury Instructions says: "The principle stated in the pattern charge is the underlying basis of malpractice actions" (1A NY PJI3d 2:15 at 259 [2014]). The Committee goes on to say that "[t]he principle extends to skilled trades and to professions not generally thought of in connection with malpractice" (id.), but we know of no basis for including automobile manufacturers in that category. This is not a malpractice case, but a negligent design or (what amounts to the same thing) a design defect case.

PJI 2:15 is reserved for malpractice cases because the standards of care applicable to malpractice cases and to other negligence cases are different. In a malpractice case against,

for example, a doctor or a lawyer, the defendant is generally held to the level of skill and care used by others in the community who practice the same profession (see Spensieri v Lasky, 94 NY2d 231, 238 [1999] ["Generally, the standard of care for a physician is one established by the profession itself"]; Toth v Community Hosp., 22 NY2d 255, 262 [1968] [same]; Riley v Wieman, 137 AD2d 309, 314 [3d Dept 1988] [holding that in some cases national, rather than local, standards may be applicable]). In negligence cases generally, by contrast, the jury must compare the defendant's conduct to that of a reasonable person under like circumstances (Restatement [Second] of Torts § 283; Bethel v New York City Tr. Auth., 92 NY2d 348, 353 [1998]). In negligent design/design defect cases, the reasonable-person standard has been given more specific form: the question is whether the product is one as to which "if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner" (Voss v Black & Decker Mfg. Co., 59 NY2d 102, 108 [1983]).

        The difference between the "community" and "reasonable person" standards is a subtle one, and in some cases an error like the one that the trial court committed here might not require reversal. So long as the charge as a whole adequately explains general negligence principles, a reviewing court may feel confident in concluding that an isolated mistake in

referring to the skill and care of others in the field did not
affect the jury's verdict.  But here, we have no such confidence.
The verdict was, as we have said, inconsistent: The jury found
for plaintiff on the negligent design claim and for Volvo on the
design defect claim, though the claims were in substance
identical.  And it did so after hearing extensive evidence about
the practices of other manufacturers, and after hearing a charge
that said, erroneously, "If you decide that Volvo did not use the
same degree of skill and care [as other manufacturers selling
automobiles in the United States], then you <u>must</u> find that Volvo
was negligent" (emphasis added).  Thus while Volvo may not
complain of the inconsistency in the verdict, because it failed
to object to it before the jury was discharged (<u>Grzesiak v
General Elec. Co.</u>, 68 NY2d 937, 938-939 [1986]), that
inconsistency leads us to believe that the error in the charge --
to which Volvo did make a timely objection -- may have confused
the jury.

### III

While the error in giving PJI 2:15 requires reversal,
we will, for the guidance of the court at a retrial, also discuss
Volvo's objection to PJI 2:16.  The court gave PJI 2:16 to the
jury as follows:

> "You have heard evidence of the
> practices of other manufacturers selling
> automobiles in the United States.  This
> evidence is to be considered by you in
> determining whether the conduct of Volvo was
> reasonable under the circumstances.

"Volvo's conduct is not to be considered unreasonable simply because someone else may have used a safer practice.

"On the other hand, a general custom, use or practice by those in the same business or trade may be considered some evidence of what constitutes reasonable conduct in that trade or business.

"You must first decide from the evidence presented in this case whether there was a general custom or practice by automobile manufacturers selling manual transmission vehicles in the United States in 1987.

"If you find that there was a custom or practice, you may take that general custom or practice into account in considering the care used by defendant Volvo in this case.

"However, a general custom or practice is not the only test. What you must decide is whether, taking all the facts and circumstances into account, defendant Volvo acted with reasonable care or failed to act with reasonable care."

We conclude that this charge was properly given. It differs from PJI 2:15 in the amount of leeway it gives the jury. PJI 2:15, as given here, told the jurors flatly that "Volvo has special skills in designing and manufacturing automobiles," and said that if Volvo failed to meet community standards the jury "must find that Volvo was negligent." But PJI 2:16 told the jury that it should "decide from the evidence . . . whether there was a general custom or practice," and that if it found there was it "may take that general custom or practice into account" (emphasis added). While the issue of custom and practice was disputed

here, there was evidence from which the jury could find that a large majority of the 1987 manual transmission cars sold in the United States had starter interlocks.  This was enough to permit a finding of custom and practice, though not to require it.

We agree with the courts below that the record here furnishes no basis for a comparative negligence charge (PJI 2:36).  Volvo's remaining arguments need not be considered in light of our decision.

Accordingly, the order of the Appellate Division should be reversed, with costs, and a new trial ordered.

Reis v Volvo Cars of North America, Inc.

No. 138



GRAFFEO, J.(dissenting):

Plaintiff Manuel Reis was grievously injured when a 1987 manual transmission station wagon, designed and manufactured by the Volvo defendants, unexpectedly lurched forward after the ignition was started, pinning him against a building. Plaintiff's left leg was crushed and subsequently amputated. Undisputedly, this accident and plaintiff's resulting injuries would not have occurred if Volvo had designed the station wagon with a starter interlock device.

Throughout the lengthy trial of plaintiff's negligence and strict liability causes of action for design defect and failure to warn, both sides presented extensive evidence bearing upon the reasonableness of Volvo's decision not to use a starter interlock device in its automotive design. Plaintiff's proof included expert testimony establishing that the starter interlock device was a feasible safety feature available in 1987 that would have cost Volvo approximately $5 per vehicle, and which was, in fact, incorporated in many manual transmission automobiles of other manufacturers that year. According to plaintiff's experts, the automobile industry was generally aware of the risk to motorists and pedestrians inherent in vehicles designed without

- 1 -

these devices.  Plaintiff's experts further opined that the station wagon in question was dangerous as designed without a starter interlock.

Volvo conceded feasibility, but contended that the station wagon was reasonably safe as designed.  To that effect, Volvo presented expert testimony contradicting plaintiff's proof regarding the extent to which other manufacturers used the device in 1987.  Volvo asserted that it had reasonably decided to omit starter interlock devices from its vehicles because the risk of an accident such as the one that occurred here was minimal and, without the device, a vehicle could be moved for a short period of time in an emergency situation if the engine was not functioning properly.

At the close of proof, the trial court charged the jury with the principles of negligence reflected in PJI 2:125 (Products Liability - Negligence), PJI 2:15 (Common Law Standard of Care - Defendant Having Special Knowledge), and PJI 2:16 (Common Law Standard of Care - Customary Business Practices) with respect to plaintiff's negligent design claim.  The PJI 2:15 charge, in essence, instructed the jury that Volvo, possessing special training and experience, owed a duty to use the same degree of skill and care as other manufacturers in the automobile industry.  Typically, the community standard of care embodied in PJI 2:15 applies to claims grounded in malpractice (see 1A NY PJI3d 2:15 at 259 [2014]).  Liability in negligent design cases

turns more properly -- not on this community standard of care -- but on whether "if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner" (Voss v Black & Decker Mfg. Co., 59 NY2d 102, 108 [1983]; see Adams v Genie Indus., Inc., 14 NY3d 535, 543 [2010]; Denny v Ford Motor Co., 87 NY2d 248, 257 [1995], rearg denied 87 NY2d [1996]). It follows then, that PJI 2:15 should ordinarily not be charged in relation to negligent design claims. As the majority points out, however, the difference between these two standards of care is a subtle one and, in some cases, this type of slight misstep may not require reversal (see majority op. at 8-9). I believe that this is such a case.

The trial judge charged PJI 2:15 in the context of its instructions to the jury on the general principles of negligence set forth in PJI 2:125. Significantly, the PJI 2:125 charge instructed the jury that the degree of care owed by Volvo was that of a "reasonably prudent manufacturer." The propriety of this instruction is beyond our review, having been submitted to the jury at Volvo's request (see Bradley v Earl B. Feiden, Inc., 8 NY3d 265, 272 [2007]; Barry v Manglass, 55 NY2d 803, 805-806 [1981], rearg denied 55 NY2d 1039 [1982]; Rupert v Sellers, 50 NY2d 881, 882-883 [1980]). Viewed in this light, the PJI 2:15 charge, in effect, merely repeated a similar standard of care as that which was charged to the jury at Volvo's insistence.

Moreover, PJI 2:16 was charged to the jury after PJI
2:15.[1]  This later charge explained to the jury that, when
considering the trial evidence pertaining to the practices of
other automobile manufacturers, Volvo's conduct was "not to be
considered unreasonable simply because someone else may have used
a safer practice" and, further, that it must take into account
"all the facts and circumstances" when determining whether Volvo
acted reasonably in designing the station wagon without a starter
interlock device.  PJI 2:16 therefore dispelled any notion that
the jury's determination should be based solely on the conduct of
other manufacturers.  Viewing the contested jury instructions as
a whole and "as tailored to the facts of this case," I agree with
the Appellate Division majority that the PJI 2:15 charge does not
warrant reversal under these circumstances (Reis v Volvo Cars of
N. Am., 105 AD3d 663, 664 [1st Dept 2013]; see generally Wild v
Catholic Health Sys., 21 NY3d 951, 955 [2013]; Nestorowich v
Ricotta, 97 NY2d 393, 401 [2002]).

As the courts below held and the majority of this Court
concedes, Volvo failed to preserve any challenge to the
consistency of the negligent design and strict liability design
defect verdicts (see Bradley, 8 NY3d at 272 n 2; Barry, 55 NY2d
at 806).  But the majority relies exclusively on this claimed
inconsistency in concluding that PJI 2:15 confused the jury.  In

_____

[1]  I agree with the majority that sufficient evidence was
presented to justify submitting the customary business practices
charge to the jury.

my view, under these unique facts, the majority's holding allows
Volvo to evade the well-settled preservation requirement and
benefit from its failure to provide the trial court with the
opportunity to cure any inconsistency before discharging the
jury.  Because ample evidence supported the jury's negligent
design verdict and I find Volvo's other arguments for reversal
unpersuasive, I would uphold the jury verdict.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed, with costs, and a new trial ordered.  Opinion by
Judge Smith.  Chief Judge Lippman and Judges Read, Pigott and
Rivera concur.  Judge Graffeo dissents and votes to affirm in an
opinion.  Judge Abdus-Salaam took no part.


Decided July 1, 2014